Olan JETT, Plaintiff–Appellee,

v.

BLUE CROSS AND BLUE SHIELD OF
ALABAMA, INC., et al.,
Defendant–Appellant,

Medical Expense Plan, Defendant.

No. 88–7659.

United States Court of Appeals,
Eleventh Circuit.

Dec. 18, 1989.

Lawrence B. Clark, Lange, Simpson, Robinson & Somerville, Sally S. Reilly, Morris Wade Richardson, Birmingham, Ala., for defendant-appellant.

Joe L. Tucker, Hardin & Taber, James V. Green, Jr., Birmingham, Ala., for plaintiff-appellee.

Before JOHNSON, Circuit Judge, RONEY *, Senior Circuit Judge and YOUNG,** Senior District Judge.

RONEY, Senior Circuit Judge:

This case presents the question as to the scope of a court's review of an administrator's decision denying hospitalization benefits on the ground that hospitalization was not medically necessary under an ERISA–governed employee medical expense plan.

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable George C. Young, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

We hold that the district court articulated the proper arbitrary and capricious standard required by ERISA, but that it, in fact, conducted an improper de novo review. We remand for further consideration.

### The Plan

The medical benefits plan in this case was established by Olan Jett's employer, South Central Bell, pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001, *et seq.* (ERISA). This is a self-insured health plan under which Blue Cross and Blue Shield of Alabama, Inc., is named as the administrator. Blue Cross processes the claims and makes the decision as to which ones are covered by the plan. Benefits under the plan are not considered insurance and South Central Bell reimburses Blue Cross the full costs of payments made for covered medical claims. Charges that are "reasonable and customary" for "medically necessary" services are covered. Those terms are defined in the plan and the booklet given to the employees. When a claim is denied, an employee may bring suit in federal court under 29 U.S.C.A. § 1132(a)(1)(B) against the administrator of the plan.

### The Hospitalization

On Monday, September 15, 1986, Dr. Kerry Kirkland, an internist, decided that the peptic ulcer and depression from which Olan Jett was suffering were sufficiently serious to warrant Jett's hospitalization. Accordingly, Dr. Kirkland admitted Jett to Brookwood Medical Center in Birmingham, Alabama on that date. Following Jett's admission, Dr. Kirkland continued to treat his peptic ulcer. Because treatment of Jett's depression fell outside of Dr. Kirkland's practice area, however, he decided to associate a psychiatrist, Dr. Clarence McDanal, in the care of Jett.

On September 16, at the request of Dr. McDanal, Jett was transferred to one of Brookwood's psychiatric units. In treating Jett's depression, Dr. McDanal utilized a combination of psychotherapy and medication. Jett's hospitalization continued through October 14, 1986. Beginning with the weekend of September 20–21, however, he was permitted to return home each weekend on therapeutic leaves of absence. The weekend absences did not diminish Jett's hospital bill, though, as Brookwood still deemed Jett to be hospitalized during the weekends for billing purposes.

### The Claim and Denial

Following Jett's discharge, the hospital, Dr. Kirkland and Dr. McDanal each submitted claims under the plan to Blue Cross for the care that they had rendered to Jett. Blue Cross paid Dr. Kirkland in full for his treatment of Jett's peptic ulcer. However, Blue Cross deferred payment of the claims related to treatment of Jett's depression pending a review of whether provision of the services in question was medically necessary.

Blue Cross ultimately denied payment for a major portion of Jett's hospitalization, concluding that its duration was not medically necessary since the treatment involved could have been provided on an outpatient basis.

### The Standard of Review

■ The parties agree that a court reviewing Blue Cross' denial of benefits under this plan must apply an arbitrary and capricious standard. Any contrary state law standard would be inapplicable because the Supreme Court has held that ERISA preempts state law as to claims made under such plans. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The recent Supreme Court case which holds that a de novo standard of review is proper under some plans validates the prior law of this Circuit that the arbitrary and capricious standard of review is appropriate here. *Firestone Tire & Rubber Co. v. Bruch*, —— U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The court held that

> a denial of benefits challenged under [29 U.S.C.A.] § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to de-

termine eligibility for benefits or to construe the terms of the plan.

*Firestone,* 109 S.Ct. at 956.

The plan in this case does give the administrator of the plan "discretionary authority to determine eligibility for benefits [and] to construe the [plan's] terms." *Id.* For example, the plan states,

As a condition precedent to coverage, it is agreed that whenever the Claims Administrator makes reasonable determinations in the administration of the [plan] (including, without limitation, determinations whether services, care, treatment, or supplies are Medically Necessary ...) such determinations shall be final and conclusive.

The plan's descriptive booklet, provided to covered employees, contains this language: "Blue Cross and Blue Shield of Alabama has the exclusive right to interpret the provisions of th[is] Plan, so its decision is conclusive and binding." Accordingly, the arbitrary and capricious standard of review applies here. *Firestone,* 109 S.Ct. at 956; *Guy v. Southeastern Iron Workers' Welfare Fund,* 877 F.2d 37, 38–39 (11th Cir. 1989).

### Scope of Review

■ When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard (sometimes used interchangeably with an abuse of discretion standard), the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made. *Brown v. Retirement Committee of Briggs & Stratton Retirement Plan,* 797 F.2d 521, 532 (7th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1311, 94 L.Ed.2d 165 (1987); *Denton v. First National Bank of Waco, Texas,* 765 F.2d 1295, 1304 (5th Cir.1985); *Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003, 1007 (4th Cir.1985).

### District Court Proceedings

■ The district court said in its opinion that the plan administrator's decision was arbitrary and capricious because it "was not based on a consideration of the relevant factors and shows a clear error of judgment." The key to this appeal is whether the district court properly followed the contours of the arbitrary and capricious standard. Blue Cross argues that the district court, in fact, conducted a de novo review and based its opinion on its own findings of fact, improperly failing to limit its consideration to the evidence that was before the Blue Cross at the time Blue Cross denied coverage. A review of the record reveals that Blue Cross is correct.

Despite the fact that, at the time Blue Cross decided to deny full coverage of Jett's hospitalization, it had examined only (1) Jett's hospital records, (2) letters written by Jett's two treating physicians, and (3) the opinion of an outside consultant who had examined the same materials, the district court considered *subsequent* testimony of Dr. McDanal that contained new information that had not been presented to Blue Cross. For example, Dr. McDanal testified (1) that Jett's depressed condition made him a danger to himself during the entire period of his hospitalization, and (2) that the medications which were provided to Jett would have been extremely dangerous if provided on an outpatient basis. Indeed, Jett's medical records stated that, prior to issuance of his first weekend pass on September 20, he was no longer suicidal. Although Dr. McDanal's letter to Blue Cross mentioned the drug treatment, nowhere did the doctor state that outpatient provision of the treatments would have been dangerous, or even that the treatments themselves were necessary to safeguard Jett's life and health.

The district court found that Blue Cross had a duty to consult with Jett's treating physicians in determining whether his entire hospitalization was medically necessary, yet the plan gave Blue Cross discretion over what information was appropriate to consider in making this determination. Blue Cross stated as its reasons for not contacting Dr. McDanal (1) that the contemporaneous hospital records, if properly kept, should have contained all the information pertinent to a medical necessity deter-

mination, (2) that contacting the doctor might have introduced an atmosphere of confrontation, (3) that by the time the claims were submitted and decided, Dr. McDanal's recollection may have faded somewhat, and (4) that the doctor's self-interest in whether the claims were paid might have influenced his presentation to Blue Cross. It cannot be said that the decision not to contact Dr. McDanal constituted abuse of discretion. The Social Security law that greater weight must be given to the opinion of the treating physician is not applicable to the decision of the claims administrator of an ERISA–governed employee health plan where the treating physician has an economic interest in the matter.

On remand, the district court should limit its review to consideration of the material available to Blue Cross at the time it made its decision. As long as a reasonable basis appears for Blue Cross' decision, it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision. Should Jett wish to present additional information that might affect the determination of eligibility for benefits, the proper course would be to remand to Blue Cross for a new determination: "As a general matter a court should not resolve the eligibility question on the basis of evidence never presented to [an ERISA plan's administrator] but should remand to the [administrator] for a new determination." *Wardle v. Central States, Southeast and Southwest Areas Pension Funds*, 627 F.2d 820, 824 (7th Cir.1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), *accord Berry*, 761 F.2d at 1007.

We note that Blue Cross has heretofore paid three days of Jett's hospitalization but has approved payment for several additional days based on the opinion of an outside consultant. According to Jett, payment for these additional days has not yet been made because of the filing of this suit. Since that part of the claim is not contest-

ed, it is assumed that Blue Cross will provide the coverage that it has approved. If not, the district court can deal with that issue upon remand.

REVERSED and REMANDED.

JOHNSON, Circuit Judge, concurring in part and dissenting in part:

Although I concur in the standard of appellate review applied by this Court to the district court judgment below, I respectfully dissent from the Court's conclusion that the district court erred in finding that Blue Cross improperly failed to pay the benefits claimed by Jett.[1]

## I. THE STANDARD OF APPELLATE REVIEW

The Court, although it does not state so explicitly, clearly applies a *de novo* standard of review to the district court's ultimate judgment that Blue Cross acted arbitrarily and capriciously in denying the disputed medical benefits. I concur in this aspect of the Court's reasoning. I discuss the issue only because there is currently some confusion in this circuit's caselaw as to the appropriate standard of appellate review in cases involving denial of employee benefits under ERISA–governed plans.

In *Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 39 (11th Cir. 1989), a panel of this Court held that it was limited to "determin[ing] whether the district court's finding that the [ERISA–governed] Fund's decision was arbitrary and capricious is clearly erroneous," citing *Musto v. American General Corp.*, 861 F.2d 897, 913 (6th Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 1745, 104 L.Ed.2d 182 (1989), and *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1093 (9th Cir.1985). *Ellenburg*, however, merely restated the familiar principle that a district court's factual findings will not be disturbed on appeal unless "clearly erroneous." *See* 763

---

1. I also agree with the Court that the proper inquiry in reviewing the denial of benefits in this case is whether Blue Cross abused its discretion or acted arbitrarily or capriciously. *See*

*Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 38–39 (11th Cir.1989) (equating the two standards).

F.2d at 1093; Fed.Rule Civ.P. 52(a).[2] The factual findings *underlying* a district court's resolution of the arbitrary-and-capricious issue are unquestionably entitled to "clearly erroneous" review. The ultimate question whether a benefits decision was arbitrary and capricious, however, is clearly one of law subject to *de novo* review on appeal. This Court's precedents, apart from *Guy*, have uniformly so stated or assumed. *See Harris v. Pullman Standard, Inc.,* 809 F.2d 1495, 1499 (11th Cir. 1987) (this Court finding denial of benefits "arbitrary and capricious as a matter of law"); *Anderson v. Ciba–Geigy Corp.,* 759 F.2d 1518, 1522 (11th Cir.), *cert. denied,* 474 U.S. 995, 106 S.Ct. 410, 88 L.Ed.2d 360 (1985) (applying arbitrary-and-capricious standard *de novo* ); *Sharron v. Amalgamated Ins. Agency Services, Inc.,* 704 F.2d 562, 567 n. 11, 567–69 (11th Cir.1983) (same).[3]

Because the Court's implicit standard of review in this case is fully in accord with the weight of controlling precedent on this issue, I concur in its opinion to that extent.

## II. THE DENIAL OF BENEFITS

The Court finds that the district court improperly based its decision on a *de novo* review of the record and its own findings of fact. I agree that Blue Cross's denial of benefits must be reviewed only in light of the information available to it prior to the challenged decision. *See Offutt v. Prudential Ins. Co.,* 735 F.2d 948, 950 (5th Cir. 1984). I cannot agree, however, that Blue Cross's denial of benefits was reasonable in this case in light of the information it received. As the majority correctly notes, the information before Blue Cross at the time the decision to deny benefits was made consisted primarily of Jett's hospital records and letters written by his two treating physicians *stating that in their professional judgment hospitalization had been medically necessary.*

Blue Cross did not assert any rational basis for its conclusion that Jett's hospitalization was *not* necessary, other than the fact that he was released on weekends. Blue Cross concluded that these releases indicated Jett was not suicidal. An obvious alternative explanation, however, is that the weekend releases were necessary in order to assess any improvements in Jett's mental condition. This supports the conclusion that Blue Cross acted arbitrarily and capriciously. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Auto, Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983) (a decision is arbitrary and capricious if the decisionmaker "entirely failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence").

An administrator's decision must be supported by substantial evidence in order to avoid being found arbitrary and capricious. *See Gunderson v. W.R. Grace & Co. Long Term Disability Income Plan,* 874 F.2d 496, 500 (8th Cir.1989); *Brown v. Retirement Committee,* 797 F.2d 521, 525 (7th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1311, 94 L.Ed.2d 165 (1987); *Ellenburg v. Brockway, Inc.,* 763 F.2d 1091, 1093 (9th Cir.1985). In this case, Blue Cross had no evidence before it that Jett's hospitalization was unnecessary, other than the fact of Jett's weekend releases. Given

**2.** The Sixth Circuit in *Musto* did state, in a conclusory holding, that the district court's finding of arbitrary and capricious conduct in that case "was clearly erroneous." 861 F.2d at 913. The Sixth Circuit did not cite Rule 52(a), however, or otherwise explain its standard of review. It may simply have intended to underscore its belief that the district court had erred. In any event, *Guy*'s reliance on cases from other circuits is inappropriate in light of contrary controlling precedent in this circuit.

**3.** The present Fifth Circuit has also articulated this distinction. *See Offutt v. Prudential Ins.*

*Co.,* 735 F.2d 948, 949 (5th Cir.1984) ("Finding that [the denial of benefits] was not arbitrary or capricious, the district court denied the employee relief. Having considered the employee's detail of alleged errors made by the district court, we conclude that its fact-findings were not clearly erroneous and its legal conclusions based on them were correct."); *see also Berry v. Ciba–Geigy Corp.,* 761 F.2d 1003, 1006–07 (4th Cir.1985) (whether arbitrary-and-capricious standard has been violated is a question of law for the court, not one of fact for a jury).

the evidence that *was* before Blue Cross—the expressed professional judgment of the two treating physicians that Jett's hospitalization *was* necessary—Blue Cross was surely obligated, at the very least, to contact those physicians and investigate the claim more fully. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, 103 S.Ct. at 2866 (decisionmaker "must examine the relevant data and articulate a satisfactory explanation for its action").

The Court excuses Blue Cross's failure reasonably to investigate Jett's claim on the ground that the Plan in this case gave Blue Cross discretion whether to seek out further information. Granting this arguendo, I find it odd, to say the least, that Blue Cross, although it could not be troubled to contact the treating physicians with first-hand knowledge of the case, did make the effort of calling in an outside consultant who had never laid eyes on Jett. Blue Cross's claim not to have acted arbitrarily or capriciously ultimately rests on the outside consultant's conclusion, based on a review of the paper record, that Jett's hospitalization was not medically necessary. The validity of that conclusion, in light of the testimony eventually developed at trial, is questionable. In any event, I do not think Blue Cross can be heard to proffer the opinion of a single outside consultant as a sufficient basis for its decision, at the same time that it selectively declined to investigate more relevant sources of information, such as the treating physicians themselves. Whether Blue Cross could reasonably have denied Jett's claim had it made such an evenhanded inquiry is not really the issue. The point is that it acted arbitrarily and capriciously in the *manner* in which it responded to Jett's claim.

The majority emphasizes that Dr. McDanal's letter to Blue Cross did not state in so many words that provision of the drug treatments Jett received would have been extremely dangerous in an outpatient context. But I assume it is within the ordinary scope of professional medical knowledge that the drugs in question—including Elavil, Lodiomil, Mellaril, Stelazine, and Librax—may be dangerous if administered on an outpatient basis. Given that Dr. McDanal's letter did refer to the drug treatment, *and that he and the other treating physician asserted the medical necessity of Jett's hospitalization,* surely Blue Cross was reasonably put on notice as to this potential justification for Jett's hospitalization.[4] Of course, Blue Cross could have clarified the obvious import of Dr. McDanal's letter by simply going to him.[5]

### III.  CONCLUSION

For the foregoing reasons, I respectfully dissent from the Court's reversal of the district court's judgment in this case.

**4.** Blue Cross's Medical Director, Dr. Ryce, who undertook the initial review of Jett's medical records, was presumably aware of the potential problems posed by outpatient treatment with the drugs prescribed for Jett. Dr. Sides, the outside consultant in this case, was a psychologist rather than an M.D. psychiatrist, and therefore not qualified to assess the medication given to Jett. This constitutes all the more reason why Blue Cross, through Dr. Ryce, should have contacted Jett's treating physicians.

**5.** I find Blue Cross's asserted reasons for declining to contact the treating physicians weak and self-serving. *See* opinion of the Court, *supra,* 1139–40. As to the first reason, that the hospital records should have contained all information relevant to the medical necessity determination, it was Blue Cross which questioned the validity of, and basis for, the expressed professional judgment contained in those records that hospitalization *was* medically necessary. Surely it was thus incumbent on Blue Cross to investigate further, and not in a manner selectively ignoring the most obvious relevant sources of information. Reasons two and three are makeweights. As to reason four, nothing would have prevented Blue Cross from reasonably taking into account any possible self-interest on the part of the treating physicians *after* assessing whatever information they provided.