Bernee CARGILE, Plaintiff,

v.

CONFEDERATION LIFE INSURANCE
GROUP PLANS and John Ector,
Defendants.

No. 1:88–CV–1850–RHH.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 10, 1990.

Timothy Worth Hewett and C. Gordon
Statham, Decatur, Ga., for plaintiff.

Ross Friend and Hans Anatol Von Spa-
kovsky, Atlanta, Ga., for defendants.

ORDER

ROBERT H. HALL, District Judge.

This case is before the court on defen-
dants' Motion for Summary Judgment.
The court DENIES defendants' Motion.

## BACKGROUND

Plaintiff Bernee Cargile brings this action pursuant to 29 U.S.C. § 1132 for wrongful failure to pay health and long term disability benefits. Plaintiff worked as an application assembly clerk for Confederation Life Insurance Company (Confederation Life). On November 14, 1986, plaintiff was involved in an automobile accident. Because she was unable to specify when she could return to work, Confederation Life terminated plaintiff on December 1, 1986.

As an employee of Confederation Life, plaintiff was covered by its ERISA welfare benefit plan. The plan name is Confederation Life Group Insurance Company Plans (the Plan) and the Plan Administrator is defendant John Ector, who also serves as an Assistant Vice President and head of personnel for Confederation Life. The Plan's primary asset is an insurance policy issued by Confederation Life to underwrite the benefits provided by the Plan. "In essence, however, [it] is really a self-funded or self-insured Plan since all benefits are paid out by the employer, Confederation Life Insurance Company, from its assets...." Defendants' Supplemental Brief at 3–4.

Under the Plan, terminated employees are entitled to a continuation of health benefits for up to one year if they are totally disabled at the time of termination. Plan Handbook at 7. If they are totally disabled, terminated employees are also entitled to monthly disability benefits for up to six months. *Id.* at 7, 14. According to the Plan, an employee is "totally disabled" if she is "unable because of sickness or accident to perform the material and substantial duties of [her] normal occupation for any employer." *Id.* at 14.

In order to receive these benefits, Plaintiff filed a Statement of Claim, dated April 14, 1987. Attached to the Statement was a medical report of Dr. Daniel L. Kingloff, M.D., who examined plaintiff on February 24, 1987. In his report, Dr. Kingloff stated that plaintiff was not disabled. According to defendants, plaintiff also included a medical report from Dr. Arthur L. Har-

graves, D.C., her attending chiropractor, dated June 16, 1987. In that report, Dr. Hargraves concluded that plaintiff was disabled. Affidavit of Maria Friend at ¶ 5. According to plaintiff, the Plan orally denied her claim for benefits. Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment (Plaintiff's Brief) at 3.

Plaintiff then retained counsel to further pursue her claim. *Id.* In a letter to plaintiff's counsel dated October 30, 1987, defendants' counsel stated that defendants medical consultants still believed that plaintiff was not totally disabled. He suggested that plaintiff submit to an independent medical examination by an orthopedic specialist. In a letter dated January 21, 1988, plaintiff's counsel submitted the report of Dr. David H. Gillis, M.D., plaintiff's attending orthopedic physician. In his report, Dr. Gillis concluded that plaintiff was totally disabled. After reviewing this report along with the other contents of plaintiff's file, defendants medical consultants again concluded that plaintiff was not disabled. Based on this conclusion, the Plan Administrator denied plaintiff's claim. Defendants' counsel so informed plaintiff's counsel in a letter dated February 10, 1988. Plaintiff sought no further internal review of the Administrator's decision.

Plaintiff then filed this action in state court against Confederation Life, asserting a state law claim for breach of contract. She then amended her complaint, dropping her breach of contract claim against Confederation Life and adding her current ERISA claim against the Plan and its Administrator. Defendants filed their summary judgment motion on January 10, 1990, arguing that plaintiff failed to exhaust her administrative remedies and that under the appropriate standard of review, the court could not disturb defendants' decision to deny plaintiff's claim. While the Motion was pending, the Eleventh Circuit decided *Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556 (11th Cir.1990), which modified the standard of review applicable to ERISA benefits decisions. On May 9, 1990, the court

ordered both parties to file briefs addressing *Brown's* application to this case.

## ANALYSIS

### I. Exhaustion of Remedies

■ Defendants argue that the court must grant summary judgment because plaintiff failed to exhaust her administrative remedies before bringing this lawsuit. It is clear that a plaintiff must exhaust available administrative remedies before suing under an ERISA insurance policy. *Merritt v. Confederation Life Insurance Co.,* 881 F.2d 1034, 1035 (11th Cir.1989). It is not clear, however, that plaintiff failed to exhaust her administrative remedies in this case.

The Plan provides the following procedure for administrative review of benefits denials:

> If a claim is not paid in full, Confederation Life will furnish notice to the claimant which will specify the reason or describe the additional information required to perfect the claim. Upon written request by the claimant within 60 days after notice is received, Confederation Life will review the claim in question and give a final written decision on the review within 60 days ... after such request is received.

Plan Handbook at 33. Unfortunately, plaintiff's correspondence with defendants lacked the precision contemplated by this provision. As a result, the court cannot determine which, if any, of plaintiff's submissions constituted a request for review and which, if any, of defendants' responses constituted a "final written decision on the review." Questions of material fact remain open with regard to the exhaustion of remedies issue.

According to defendants, the letter dated February 10, 1988 signed by defendants' counsel constituted the initial denial of benefits. Because plaintiff did not submit a request for review after receiving that letter, defendants argue that she failed to comply with the Plan's review procedures. Plaintiff, however, contends that the February 10th letter constituted defendants'

"final written decision on the review." In her brief opposing defendants' summary judgment motion, plaintiff argues that defendants rejected her first request for benefits without issuing a written denial. Plaintiff's counsel then began his correspondence with defendants, eventually leading to the February 10th letter. According to plaintiff, her attorney's initial demand for benefits constituted the necessary written request for review.

Certain evidence supports plaintiff's position. To begin, the court notes that defendants could have orally denied plaintiff's claim because the Plan does not require defendants to put initial denials in writing. *See* Plan Handbook at 33 (requiring written decision only on review). More importantly, the letter from defendants' counsel to plaintiff's counsel dated October 30, 1987 indicates that plaintiff's claim had already been denied. At page 2, defendants' counsel writes "[o]ur medical consultants have *again* reviewed this file ... [and] are *still* of the opinion that there is no objective evidence that Ms. Cargile meets the definition of total disability." (emphasis added). In light of this evidence, questions of fact exist regarding the premise of defendants' exhaustion of remedies argument, namely, whether the February 10th letter constituted the initial denial of plaintiff's claim.

### II. Denial of Benefits

#### A. Standard of Review

■ In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that ERISA benefits denial decisions are subject to de novo judicial review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* 109 S.Ct. at 956. If a plan does vest such discretionary authority in its administrator, then benefits decisions should be reviewed under the more deferential arbitrary and capricious standard. *Id.*

Defendants correctly argue that the arbitrary and capricious standard applies to this case because the Plan confers discre-

tion on the Administrator to make benefits determinations. The Plan states:

> The Plan Administrator is responsible for the administration of the plan and is the designated agent for the service of legal process for the plan. Functions performed by the Plan Administrator include: the receipt and deposit of contributions, maintenance of records of plan participants, authorization and payment of administrative expenses, selection of insurance consultants, selection of the insurance carrier, and the determination of eligibility of individual claimants for receipt of benefits.

Plan Handbook at 36. Thus, the court cannot review defendants' decision to deny plaintiff benefits de novo. Instead, it must review the decision under the arbitrary and capricious standard.

■ However, the complete standard of review inquiry remains far from over. In *Firestone*, the Supreme Court recognized that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor[ ] in determining whether there is an abuse of discretion.'" 109 S.Ct. at 956. Pursuant to this mandate, the Eleventh Circuit recently undertook "to develop a coherent method for integrating factors such as self-interest into the legal framework for reviewing benefits determinations," resulting in a modified arbitrary and capricious standard that this court finds applicable to the instant case. *Brown*, 898 F.2d at 1561.

In *Brown*, the plaintiff's employer, Truck Rentals of Alabama, Inc., established an ERISA plan under which Blue Cross provided insurance coverage to Truck Rentals' employees for a monthly premium. *Id.* at 1558. This was an insurance policy plan, meaning that the plan's sole asset consisted of the insurance policy issued by Blue Cross rather than an actual trust fund. Therefore, Blue Cross paid all claims out of its own assets. *Id.* at 1561. If the amount of claims were to exceed the amount of premiums collected, Blue Cross would presumably suffer the loss.

The plan's problem was that Blue Cross also made all benefits determinations. *Id.* Faced with this situation, the court of appeals found that the insurance company's fiduciary role lies in perpetual conflict with its profit-making role as a business. That is, when an insurance company serves as an ERISA fiduciary to a plan composed solely of a policy or contract issued by that company, it is exercising discretion over a situation for which it incurs "direct, immediate expense as a result of benefit determinations favorable to [p]lan participants."

*Id.* (quoting *DeNobel v. Vitro Corp.*, 885 F.2d 1180, 1191 (4th Cir.1989)). The court accordingly concluded that "a highly deferential standard of review [was] inappropriate." *Brown*, 898 F.2d at 1562.

Instead, the court tempered the highly deferential arbitrary and capricious standard in light of its concern for conflicts of interest. The court held

> that when a plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretation of plan provisions committed to its discretion was not tainted by self-interest. That is, a wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants or beneficiaries.

*Id.* at 1566–67. This court finds that it must apply the above standard of review because defendant Plan Administrator operated under the same conflict of interest as did the insurance company in *Brown*.

As was the case in *Brown*, the primary asset of defendants' plan is a group insurance policy, not a separate trust fund. And because it is a self-insured plan, benefits are paid out of Confederation Life's own assets. The conflict arises because the individual making the benefits determinations, defendant Ector, is the Assistant

Vice President and head of the Personnel Department of Confederation Life. Like the Blue Cross personnel charged with making benefits determinations in *Brown*, Ector causes his primary employer " 'direct, immediate expense as a result of benefit determinations favorable to [p]lan participants.' " *Id.* at 1561 (quoting *DeNobel*, 885 F.2d at 1191).

Defendants, of course, vigorously dispute this conclusion. They attempt to distinguish *Brown* from the instant case on the ground that the *Brown* plan was administered by a third party insurer, a circumstance not present here. Although this distinction is factually correct, it is meaningless with regard to the conflict of interest analysis set forth in *Brown*. As discussed *supra*, the feature of the *Brown* plan giving rise to the conflict of interest was not Blue Cross' position as a third party.[1] Rather, it was that Blue Cross paid claims from its own assets rather than from the assets of a separate trust. In this respect, defendants' plan is identical to the plan in *Brown*.

Contrasting the plans in *Brown* and the instant case with the plan in *DeNobel* further illustrates the court's approach. The *DeNobel* plan involved a fully funded benefits trust. Although the employer contributed to the trust fund, "benefits decisions ha[d] an immediate impact only on the fund itself. In turn, [the employer/administrator] incur[red] no direct, immediate expense as a result of benefits determinations favorable to Plan participants." *DeNobel*, 885 F.2d at 1191. Consequently, the Fourth Circuit declined to modify the arbitrary and capricious standard to account for conflict of interest, "notwithstanding that [the plan administrators] serve dual roles as company employees and pension plan fiduciaries." *Id.*

Finally, the court finds that defendants' reliance on *Brown v. Babcock and Wilcox Co.*, 589 F.Supp. 64 (S.D.Ga.1984) and *Flinchbaugh v. Chicago Pneumatic Tool Co.*, 531 F.Supp. 110 (W.D.Pa.1982) is misplaced. These cases simply recognize that an employer may use its managers as plan trustees or administrators without violating ERISA. But this court does not hold that Confederation Life's use of Mr. Ector as Plan Administrator violates ERISA. It holds only that Mr. Ector's benefits decisions as Plan Administrator are not entitled to absolute deference on review.

*B. Application of the Standard*

Application of the *Brown* standard involves two steps. First, the court must determine the legally correct interpretation of the disputed plan provision, "[t]hat is, ... if [plaintiff] has proposed a sound interpretation of the plan, one that can rival the fiduciary's interpretation." *Brown*, 898 F.2d at 1570; *see also id.* at 1566 n. 12 (first step in applying arbitrary and capricious standard is determining outcome from de novo perspective).[2] Second, the court must "evaluate whether the fiduciary

---

1. The recent case of *Jett v. Blue Cross and Blue Shield of Alabama*, 890 F.2d 1137 (11th Cir. 1989) also illustrates this point. In *Jett*, the employer did contract with a third party insurance company, Blue Cross, which in turn made all benefits determinations. Under the plan, however, the employer reimbursed Blue Cross for "the full costs of payments made for covered medical claims." *Id.* at 1138. Therefore, Blue Cross "would not suffer any direct, immediate expense as a result of benefit determinations favorable to plan participants" and its denial decision "deserved and was accorded the highest degree of deference" upon review. *Brown*, 898 F.2d at 1562. In other words, the simple fact that Blue Cross was a third party did not mandate a heightened standard of review.

2. The court recognizes that this case, unlike *Brown*, does not involve a disputed plan inter-

pretation. Rather, it involves a disputed benefits determination. This difference does not undermine *Brown's* application to this case. According to *Firestone*, the ground for applying the arbitrary and capricious standard as opposed to the de novo standard is a plan's grant of discretionary authority to its fiduciary or administrator. 109 S.Ct. at 954–956. Where, as here, an administrator has authority to interpret plan provisions and make benefits determinations, there is no reason to apply a different standard of review to one group of decisions than to the other. *See Newell v. Prudential Ins. Co.*, 904 F.2d 644, 652 (11th Cir.1990) (applying modified arbitrary and capricious standard of *Brown* outside the context of plan interpretation). For the purposes of applying the *Brown* analysis to the facts of this case, "plan interpretation" is synonymous with "benefits determination."

was arbitrary and capricious in adopting a different interpretation." *Id.* As noted above, a fiduciary's interpretation is arbitrary and capricious if it "advances the conflicting interest of the fiduciary at the expense of the affected beneficiary ... unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries." *Id.* at 1566–67.

As to the first step, the court finds that from a de novo perspective, plaintiff's proposed benefits determination is "sound," and is clearly sufficient to at least "rival" defendants' decision. Only three doctors actually examined plaintiff. Two of them, David M. Gillis, M.D., an orthopedic specialist, and Arthur L. Hargraves, D.C., examined her more than once. Both of their opinions strongly support the conclusion that plaintiff was totally disabled from performing her job as an application assembly clerk.

Dr. Hargraves attended to plaintiff from shortly after the accident in November, 1986 through February, 1987. In a letter to plaintiff's counsel dated March 30, 1987, Dr. Hargraves expressed his opinion that while she was under his care, plaintiff was totally disabled from work. Plaintiff returned to Dr. Hargraves on June 2, 1987, at which time he conducted an impairment examination and concluded that plaintiff suffered from a 15% "impairment of the whole man." Dr. Hargraves also found that plaintiff's responses to different tests substantiated her complaints of severe neck and back pain. Letter from Dr. Hargraves to C. Gordon Stratham Dated June 16, 1987 at 2. All of Dr. Hargraves findings were sent to defendants.

Plaintiff saw Dr. Gillis from September 29, 1987 through November 5, 1987. In a letter to plaintiff's counsel dated December 21, 1987, Dr. Gillis found that plaintiff suffered from "[a]cute chronic low back sprain-strain moderate to severe" as well as "right shoulder contusion-tendonitis secondary to accident." He also reported that plaintiff's "range of motion" was "de-

creased by 40% to 50%." Dr. Gillis concluded that plaintiff suffered from a degree of disability around 20% to 25%.[3]

One other physician actually examined plaintiff, Dr. Daniel L. Kingloff. Plaintiff's only visit to Dr. Kingloff occurred on February 24, 1987. He reported that plaintiff was not disabled. The other medical opinions on which Mr. Ector relied all came from Confederation Life's medical and chiropractic consultants, none of whom actually examined plaintiff and all of whom agreed with Dr. Kingloff that plaintiff was not disabled. These consultants included Dr. James C. Jamison, M.D. and Dr. Gary L. Petry, M.D., who is also an Assistant Vice President and Medical Director of Confederation Life.

Upon consideration of this evidence from a de novo perspective, the court is convinced that plaintiff was totally disabled from acting as an application assembly clerk. The two doctors most familiar with plaintiff agreed that she was totally disabled and suffered from severe neck and back strain. Only one doctor who actually saw plaintiff reached a contrary conclusion, and he examined plaintiff but a single time. And although the position of application assembly clerk does not require heavy lifting and would not otherwise test the endurance of a person in good health, it does involve a degree of bending, stooping and light lifting beyond the capacity of a person with serious neck and back strain. The court accordingly finds plaintiff's proposed finding of total disability to be sufficiently "sound" to "rival" defendants' contrary determination. *Brown,* 898 F.2d at 1570.

■ The court must now determine whether defendants were arbitrary and capricious in making their determination that plaintiff was not disabled. That is, the court must evaluate whether defendants have "justifie[d] their [determination] on the ground of its benefit to the class of all participants and beneficiaries." *Id.* at 1567. Defendants' attempt to meet this burden consists of a single sentence in their Supplemental Brief to the effect that

---

**3.** The court cannot consider Dr. Gillis' affidavit dated January 30, 1989 because it was not be-
fore defendant Ector at the time he denied plaintiff's benefits.

by denying plaintiff benefits, the Administrator "is conserving and protecting the assets of the Plan for the benefit of current and future beneficiaries who really are totally disabled." Defendants' Supplemental Brief at 5–6.

The court finds this sentence insufficient to satisfy defendants' burden. *Brown* teaches that because "[d]ecisions made by the issuing company on behalf of a plan based on a contract of insurance ... inherently implicate the hobgoblin of self-interest.... [t]he presumption that the fiduciary is acting for the future stability of the fund cannot be entertained." *Brown*, 898 F.2d at 1568. The fiduciary may "purge the taint of self-interest" only by showing that "the facts ... bear out [his] assertion that [his] interpretation of the policy is calculated to maximize the benefits available to plan participants and beneficiaries at a cost the plan sponsor can afford (or will pay)." *Id.* Clearly, the Administrator's naked assertion that he sought to conserve the Plan's assets does not constitute such a showing. Questions of material fact remain with regard to whether defendants can "purge the taint of self-interest" from their decision.

## CONCLUSION

The court DENIES defendants' Motion for Summary Judgment.

So ORDERED.