**Phyllis A. REED, individually, and as Personal Representative of the Estate of Edna Reed, deceased, Plaintiff,**

v.

**AMERICAN EXPRESS COMPANY, a New York Corporation, d/b/a American Express Medical Plan and Aetna Life Insurance Company, a Connecticut Corporation, Defendants.**

No. 93–8602–CIV.

United States District Court, S.D. Florida.

Sept. 20, 1994.

William S. Williams, Lytal & Reiter, West Palm Beach, FL, for plaintiff.

Jay S. Blumenkopf, Jonathan M. Fordin, Eckert Seamans Cherin & Mellott, Boca Raton, FL, for defendants American Exp. Co., and Aetna Life Ins. Co.

## ORDER

GONZALEZ, District Judge.

**THIS CAUSE** has come before the Court upon the Defendants' Motion for Summary Judgement. The Motion has been fully briefed and is ripe for ruling.

This is an ERISA[1] brought by Phyllis Reed (plaintiff), the personal representative of the estate of Edna Reed (decedent), against American Express and Aetna Life Insurance Company (defendants). This claim arises out of medical expenses incurred by the decedent during the last months of her life. As the wife of an employee of American Express, the decedent was a covered dependant under American Express' Plan of Benefits. This fact is not contested by the defendants.

On February 3, 1990, the 95 year old decedent fell in her home, injuring her back. She was hospitalized through February 8, and upon her release she was diagnosed with diverticulitis of the colon, a fractured lumbar vertebra, atrial fibrillation, hypovolemia and Alzheimer's disease. Around the clock private nursing was ordered for her care at home by her attending physician, Dr. Robert Weiss. The decedent died in May of 1991.

On five separate occasions, the defendants have reviewed the plaintiff's claim for the nursing services provided to the decedent in the last months of her life. After each review, they denied coverage. The defendants assert that the nursing services fall outside the coverage of the plan because they were neither medically necessary, nor of the type that required performance by a registered nurse. The plaintiff does not dispute the defendants' reading of the plan's terms, but argues instead that the defendants erred in concluding that the nursing services were not medically necessary. The plaintiff relies upon the opinions of the decedent's treating physician and the nurse who supervised her care, both of whom assert that the services were medically necessary.

### The Standard of Review

■ The parties disagree on the appropriate standard of review to be followed by this Court. The defendants assert that the Court should only overturn the plan administrator's decision if it was arbitrary and capricious. The plaintiff, on the other hand, argues that de novo review should be undertaken by this court. Both parties rely on *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989) to support their arguments.

In *Firestone,* the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) must be reviewed under a de novo standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms, in which cases a deferential standard of review is appropriate." 489 U.S. at 102, 109 S.Ct. at 949. This "deferential standard" is referred to by the courts of the Eleventh Circuit alternatively as an abuse of discretion or arbitrary and capricious standard. *See Anderson v. Blue Cross/Blue Shield of Alabama,* 907 F.2d 1072, 1075 n. 2 (11th Cir.1990) (citations omitted).

The defendants rely upon the following provision in the plan to support their argument that the deferential standard of review applies:

> The plan administrator has the exclusive right to interpret the provisions of the plan and its decision is final, conclusive and binding (except as otherwise provided in the plan or by law).

Plaintiff's Exhibit A, at 32. The defendants also point to several other portions of the plan where some form of discretion seems to be delegated to Aetna. *See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment, at 11–12. Relying upon these provisions, the defendants assert that the plan gives the administrator sufficient discretionary authority to satisfy the requirements of *Firestone.*

1. Employee Retirement Income Security Act of 1974, 88 Stat. 829, *as amended,* 29 U.S.C. § 1001 *et seq.*

The defendants are correct. Unlike cases such as *Kirwan v. Marriott Corp.*, 10 F.3d 784 (11th Cir.1994), the plan in this case plainly invests the administrator with discretion to interpret its provisions. Thus, it is more analogous to the plans in *Brown v. Blue Cross & Blue Shield of Alabama, Inc.,* 898 F.2d 1556, 1559 (11th Cir.1990), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991), *Guy v. Southeastern Iron Workers' Welfare Fund,* 877 F.2d 37, 39 (11th Cir.1989), and *Lee v. Blue Cross/Blue Shield of Alabama, Inc.,* 10 F.3d 1547, 1549–50 (11th Cir.1994).

The plaintiff's argument on this issue in his response brief is misplaced. The plaintiff asserts that because American Express had the right to review and modify claims determinations made by Aetna under the plan, the administrator's determinations were not final and conclusive. Thus, according to plaintiff, the requirements of *Firestone* are not met, and this Court should apply the de novo standard of review. The Administrative Services Contract, however, plainly states that "Aetna in performing its obligations under this Contract is acting only as agent of the Contractholder" [American Express] and "the applicable Employee Benefits Administration Committees of Contractholder and the Participating Employers shall ... be deemed the administrators of the Plans." Defendants' Exhibit A2, at 10 (emphasis added). Thus, because American Express is the administrator of the plan and Aetna is merely their agent, the administrator's conclusions are final and binding under the plan.

■ The defendants correctly assert that the appropriate standard of review in this case is the deferential standard articulated in *Firestone.* However, they ignore several important Eleventh Circuit cases discussing that standard. The defendants' arguments suggest that the appropriate level of scrutiny under this standard is the same highly deferential level upon which an appellate court reviews a district court's finding of facts. The Courts of the Eleventh Circuit, however, have made clear that the arbitrary and capricious standard "must be contextually tailored" by the circumstances of a case. *Brown v. Blue Cross & Blue Shield of Ala-*

*bama, Inc.,* 898 F.2d 1556, 1563–64 (11th Cir.1990) (citation omitted). The degree of specificity with which a court should reexamine the decisions of an administrator or fiduciary under the deferential standard is not static, but "ranges from slight to great...." *Id.* at 1564. In short, "the arbitrary and capricious standard may be a range, not a point." *Id.* (citations omitted).

■ Generally, under the arbitrary and capricious standard, a court's review is limited to determining whether there was a reasonable basis for the administrator's denial of a claim. *Jett v. Blue Cross & Blue Shield of Alabama,* 890 F.2d 1137, 1139 (11th Cir. 1989). Moreover, only those facts in possession of the administrator at the time of the determination should be considered by a court. *Id.* However, any conflict of interest under which an administrator may have been operating is an important factor in determining whether there has been an abuse of discretion. *Firestone,* 489 U.S. at 115, 109 S.Ct. at 956. Even a reasonable interpretation, if wrong, "is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries." *Brown,* 898 F.2d at 1567.

According to the Eleventh Circuit Court of Appeals, when an administrator or fiduciary of a plan "pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business.... We conclude ... that a 'strong conflict of interest [exists] when the fiduciary making a discretionary decision is also the insurance company responsible for paying the claims....'" *Anderson v. Blue Cross/Blue Shield of Alabama,* 907 F.2d 1072, 1076 (11th Cir.1990) citing *Brown, supra.* While the court's comments in *Anderson* were made with reference to an insurance company that was acting as an administrator, they are equally applicable to the present case.

A conflict of interest appears to exist in this case. The defendants themselves have stated that American Express is the administrator of the employee benefits plan, with

Aetna acting as their agent. *See* discussion *supra*, at —— – ——. Also, under the terms of the Administrative Services Contract, American Express is bound to reimburse Aetna for any claims paid. Defendant's Exhibit A2 at 10. Thus, American Express is both the administrator and the party ultimately liable for any claims paid. As a result "it is exercising discretion over a situation for which it incurs 'direct, immediate expense as a result of benefit determinations favorable to [p]lan participants.'" *Brown,* 898 F.2d at 1561. Therefore, "a highly deferential standard of review is inappropriate." *Id.,* at 1562.

While the relationship between Aetna and American Express seems similar to that in *Jett, supra,* it has been distinguished by the defendants themselves. The court in *Jett,* while not directly addressing the issue, seemed to accept that no conflict of interest exists where an "insurer" acts as the plan administrator and initial payor, but the insured remains ultimately liable under the plan. 890 F.2d at 1138; *see also Brown,* 898 F.2d at 1562 (discussing *Jett*). Nowhere in *Jett,* however, is it evident that Blue Cross was merely acting as the agent of South Central Bell, the plaintiff's employer. Instead, Blue Cross is referred to as the administrator, and the plan expressly invests Blue Cross with the authority to interpret its terms. Here, in contrast, and by the defendants' own admissions, Aetna acted as American Express' agent and its determinations were subject to American Express' review and approval. Under settled agency principles, all actions taken by Aetna on behalf of American Express and subject to its control can be imputed to American Express. Thus, this case is more analogous to the situations in *Brown, supra,* and *Lee v. Blue Cross/Blue Shield of Alabama, Inc.,* 10 F.3d 1547 (11th Cir.1994). Therefore, a less deferential level of review is appropriate.

*Application in This Case*

■ As dictated by general trust law principles, "a finding of a conflict of interest has a tremendous impact on the evaluation of a fiduciary's actions." *Brown,* 898 F.2d at 1565. Initially, the Court must undertake de novo review of the plan's terms to determine if the administrator's interpretation is wrong,

or if the plaintiff propounds a sound and reasonable interpretation of the plan. *Id.,* at 1556 n. 12; *Lee,* 10 F.3d at 1550. The doctrine of contra proferentum should be applied in resolving any ambiguities. *Lee,* 10 F.3d at 1551. If the administrator's interpretation is found to be wrong, the burden shifts to the administrator to prove that its actions "were not tainted by self-interest." *Id.,* at 1552. This can be accomplished by showing that its interpretation maximizes benefits to the plan participants as a class. *Id.*

■ The Court must first determine whether the administrator's interpretation was wrong, or whether the plaintiff advances a sound interpretation of the plan. The dispute between the plaintiff and defendant in this case is essentially factual. The plaintiff does not advance a different interpretation of the plan, but merely asserts that the nursing services for which payment is sought were medically necessary. Thus, the defendants were not wrong in their interpretation of the plan's terms. Yet the administrator may still have acted arbitrarily and capriciously in finding that the services for which coverage is sought were not medically necessary skilled nursing services. As general trust principles regarding conflicts of interest control, the fact that the dispute in this case is factual and not interpretational is of no consequence. This court must still ask if "the plaintiff's proposed benefits determination is 'sound.'" *Cargile v. Confederation Life Ins. Group Plans,* 748 F.Supp. 874, 878 n. 2, 879 (N.D.Ga.1990).

The defendants, relying mostly on the nurse's notes, argue that the services in dispute in this case were custodial in nature and did not constitute skilled nursing care. They contend, therefore, that benefits under the plan were appropriately denied. Under "Other Medical Expenses," the plan covers charges of an R.N. or a nursing agency when providing "skilled nursing care." Skilled nursing care includes "[p]rivate duty nursing by an R.N. if the family member's condition requires skilled nursing services and visiting nursing care is not adequate." Defendants' Exhibit A1, at MMEB–2. It does not include "that part or all of any nursing care that

does not require the skills on an R.N." *Id.* "Skilled Nursing Services" are defined as "professional services that may be rendered by a registered professional nurse or by a licensed practical nurse under the direction of a registered professional nurse." Defendants' Exhibit A1 at Section III, GP–3.

The defendants also assert that "Custodial Care" services are specifically excluded by the plan, but in their brief they refer only to the definition of Custodial Care, which provides:

> "Custodial Care" means care made up of services and supplies that are furnished primarily to train or assist in personal hygiene or other activities of daily living rather than to provide therapeutic treatment. Such care is custodial regardless of who recommends, provides or directs the care....

*Id.,* at GP–2. The definition does not itself state that Custodial Care services are excluded from coverage. The defendants apparently draw this conclusion from the definition of Skilled Nursing Services and the requirement that all services be Medically Necessary. *Id.*[2]

This Court finds that the plaintiff's proposed benefits determination is sound and rivals that of the defendants. *See Cargile,* 748 F.Supp. at 879. In the opinion of her treating physician (Dr. Robert Weiss), the decedent—a 95 year old woman—was infirm, ill and of unsound mind upon her release from the hospital. *See* Plaintiff's Composite Exhibit A. According to Dr. Weiss the decedent required

> around the clock skilled nursing care to dispense medication, aspirate fluids, monitor vital signs and evaluate her overall medical condition. Skilled nursing care was required and medically necessary due to Edna's complicated medical condition.... The around the clock skilled nursing care Edna Reed received was without question medically necessary. If Edna Reed had not received the level of skilled nursing care actually rendered, it would have been necessary to hospitalize

or otherwise institutionalize Edna with around the clock skilled medical care until her death.

*Id.,* at 2.

Shirley Brown, the nurse in charge of the nursing services provided to the decedent, also stated that medically necessary, skilled nursing services were provided. Nurse Brown stated that:

> Skilled nursing care was required and performed on Edna Reed to monitor medications, supply oxygen, perform suctioning, administer enemas, insert urinary catheters, monitor and assess vital signs, monitor heart status, provide physical therapy, consult with the treating physician, and other skilled nursing care [sic].

Plaintiff's Composite Exhibit B, at 1.

In denying coverage, the defendants relied upon the decedent's medical records and the nurses' notes, the latter including such statements as "pleasant and cooperative"; "ate well"; "reading newspaper"; "sleeping soundly"; "put to bed"; "rubbed lotion on back"; "put in wheel chair"; "visiting with daughter"; "alert"; "resting quietly"; "[h]ad fair evening"; "dinner of turkey and dressing, macaroni and cheese...." Defendants Memorandum in Support of Motion for Summary Judgment, at 5.

Considering the information provided, the Court accepts the plaintiff's proposed benefits determination sound. Accordingly, the burden shifts to the defendants to prove that the administrator's denial of benefits was not arbitrary and capricious. The defendants may satisfy this burden by justifying their determination "on the ground of its benefit to the class of all participants and beneficiaries." *Brown,* 898 F.2d at 1567. One piece of evidence in particular supports this conclusion—the fifth review of the plaintiff's claim was completed by a internist at the Medical Review Institute (MRI). *See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment, at 7–8. The MRI internist concurred with the defendants in

---

**2.** The Court does not, at this time, opine as to whether any other provisions in the plan cover the plaintiff's claim. The plaintiff did not draw the court's attention to any such terms. This review is limited, therefore, to the parties' dispute under the above referenced terms.

finding that the nursing services were not medically necessary.

Notwithstanding this piece of evidence, however, the Motion Summary Judgment must be denied as the parties have not yet addressed the issue of the defendants' self-interest. The defendants may still prove that their decision was not motivated by self-interest, or that it was made in the best interest of the class of beneficiaries as a whole. Unless and until they do, however, the Court cannot conclude that there exists no genuine issue of material fact and that the defendants are entitled to judgment as a matter of law.

Accordingly, the Court having reviewed the motion and the record, and being otherwise duly advised, it is hereby:

**ORDERED** and **ADJUDGED** that the defendant's Motion for Summary Judgment is **DENIED.**

**DONE AND ORDERED.**