[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13393
Non-Argument Calendar

_____

D.C. Docket No. 0:19-cv-61695-RAR

GREGORY CAMPBELL,

Plaintiff-Appellant,

versus

RELIANCE STANDARD
LIFE INS. CO.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 25, 2021)

Before JORDAN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

This appeal results from a denial of benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1133(2).  Gregory Campbell appeals the district court's grant of summary judgment affirming the denial of his application for long term disability benefits by Reliance Standard Life Insurance Company.  He argues that Reliance failed to provide him with a "full and fair review" of its initial decision to deny his application for benefits and also wrongly denied his benefits. For the reasons which follow, we affirm.

**I**

Mr. Campbell worked as a car salesman until 2017, when he began to experience health issues.  He stopped working on April 27, 2017, prior to undergoing surgery for aortic valve replacement, attempted mitral valve repair, and mitral valve replacement.  Following his surgery, he experienced complications—including cardiogenic shock and multisystem organ failure—that required him to be hospitalized for about one month.  He then underwent surgery again, this time for a redo sternotomy, excision of dehisced mitral valve, a redo mitral valve replacement, removal of a ruptured balloon pump, and insertion of a new intra-aortic balloon pump.  After he was released from the hospital, Mr. Campbell underwent at least two echocardiograms.  The first one, on November 21, 2017, showed normal left ventricular size and systolic function and a 55% left ventricle ejection fraction.  The

2

second one, on December 4, 2018, showed decreased left ventricular systolic function with a left ventricle ejection fraction of greater than 40%.

The Reliance Standard Group Policy under which Mr. Campbell is claiming benefits defines "Total Disability" in stages. To be considered "Totally Disabled" during the first twelve months of a payable claim, an insured must be unable to "perform the substantial and material duties of his/her regular occupation." Mr. Campbell's regular occupation is "Sales Associate, New Vehicles," which the parties do not dispute is considered a "light duty" occupation. After a claimant has received benefits for twelve months, the definition of Total Disability changes. To continue receiving benefits, a claimant must be unable to "perform the material duties of any occupation." Any occupation is one that the claimant's "education, training or experience will reasonably allow."

Mr. Campbell's initial disability claim was approved and Reliance paid his benefits throughout the "regular occupation" period. For Mr. Campbell's claim, the change in definition of Total Disability occurred on October 25, 2018. Thus, to continue receiving disability benefits from Reliance under the plan after that date, Mr. Campbell was required to show that he was unable to perform "any occupation."

Reliance reviewed Mr. Campbell's medical records and retained a vocational specialist who identified "five alternative sedentary occupations suitable for Mr. Campbell." Reliance determined that Mr. Campbell had not shown that he was

totally disabled under the "any occupation" standard and notified him that his benefits were being terminated.

On February 11, 2019, Mr. Campbell appealed Reliance's denial of benefits. Included in his appeal were two separate but identical letters from treating physicians that stated: "I am writing to inform you that Mr. Gregory Campbell has been evaluated today. Mr. Campbell has been diagnosed with a cardiovascular disease and uncontrolled high blood pressure. Due to his diagnosis, Mr. Campbell is unable to return to work."

To evaluate Mr. Campbell's condition, Reliance retained an independent doctor to conduct an in-person medical examination of him. After examining Mr. Campbell, Dr. Jaime Llobet prepared a report concluding that "[s]trictly from the cardiac point of view I see no anatomic, physiologic, hemodynamic or structural heart illness that would prevent this gentleman from returning to work as a car salesman. He is a functional Class II-B and he is limited in his activities to LIGHT WORK."

Reliance provided Mr. Campbell with this medical report and Mr. Campbell's two treating physicians then engaged in a series of back-and-forth letters with Dr. Llobet. In each letter, Mr. Campbell's treating physicians reiterated their conclusion that Mr. Campbell was "completely and totally disabled." But neither of Mr. Campbell's physicians gave any reasoning for this conclusion. Nor did they address

any of the specific points raised in Dr. Llobet's report. Dr. Llobet responded to each round of letters by essentially noting that because no new medical evidence had been offered, his conclusion that Mr. Campbell was not totally disabled remained the same. After Dr. Llobet prepared a third addendum to his report on June 13, 2019, one of Mr. Campbell's treating physicians, Dr. David Korn, responded with a final letter stating that "Mr. Gregory Campbell has multiple runs of Arrhythmia noted on his ICD check. Patient is having multiple runs of non-sustained VT – which are symptomatic. Also has runs of atrial-tachycardia and atria-flutter He is symptomatic with dizziness and near syncope. Mr. Campbell is not able to work due to these events." Reliance determined that, because this final letter did not provide any additional medical evidence that had not been previously reviewed by Dr. Llobet, it did not warrant his further consideration. After considering all of Mr. Campbell's medical evidence and Dr. Llobet's report and addenda, Reliance upheld the denial of benefits decision.

## II

We review a district court's order granting summary judgment *de novo*, "viewing all evidence, and drawing all reasonable inferences, in favor of the non-moving party." *Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 767 (11th Cir. 2005).

Because the Group Policy gives Reliance discretion as the administrator, our review of the denial of benefits examines whether the decision was arbitrary and capricious. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008) (citing *Jett v. Blue Cross & Blue Shield of Ala.,* 890 F.2d 1137, 1139 (11th Cir. 1989)). "When conducting a review of an ERISA benefits denial under an arbitrary and capricious standard (sometimes used interchangeably with an abuse of discretion standard), the function of the court is to determine whether there was a reasonable basis for the decision, based upon the facts as known to the administrator at the time the decision was made." *Id.*

This Court has created "a well-defined series of steps in reviewing a denial of benefits decision in an ERISA case" to determine whether the decision of the administrator was arbitrary and capricious. *Glazer*, 524 F.3d at 1246 (quoting *Tippitt v. Reliance Standard Life Ins. Co.,* 457 F.3d 1227, 1231–32 (11th Cir. 2006)). "At each step, the court makes a determination that results in either the progression to the next step or the end of the inquiry." *Id.* at 1232 (quoting *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.,* 240 F.3d 982, 993 (11th Cir. 2001)) (internal quotation marks omitted). In conducting this review, we are "limited to 'the facts as known to the administrator at the time the decision was made.'" *Glazer*, 524 F.3d at 1246 (quoting *Jett,* 890 F.2d at 1139).

6

We must first "[a]pply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is 'wrong' (i.e., the court disagrees with the administrator's decision); if it is not, then [we] end the inquiry and affirm the decision." *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). "If the administrator's decision in fact is *de novo* wrong, then [we] determine whether he was vested with discretion in reviewing claims; if not, [we] end [our] judicial inquiry and reverse the decision." *Id*. (citation and quotation marks omitted). "If the administrator's decision is *de novo* wrong and he was vested with discretion in reviewing claims, then [we] determine whether reasonable grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard)." *Id*. (citation and quotation marks omitted).

For purposes of our analysis in this case we assume, without deciding, that Reliance's decision was "*de novo* wrong," and proceed to determine whether Reliance was vested with discretion. *See id*. Because it is undisputed that Reliance had discretion as the administrator under the Group Policy, we must proceed to determine whether reasonable grounds supported its decision (i.e., whether the decision was arbitrary and capricious). *See id*.

Based on all of the evidence—including the medical records and physician testimony that Reliance reviewed—we conclude that reasonable grounds supported Reliance's benefits decision and, thus, that the decision was not arbitrary and

capricious.   Because Reliance's decision is not "arbitrary and capricious," our inquiry ends, and we affirm the district court's decision. *Id*.

Mr. Campbell had "the burden of proving his entitlement to contractual benefits." *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998).   Reliance considered the medical information submitted by Mr. Campbell's doctors and relied on the advice of an independent medical professional who conducted a physical examination to conclude that Mr. Campbell had failed to make a sufficient showing of disability under the plan.

Mr. Campbell argues that Reliance's decision to deny his application for disability benefits was wrong because Reliance did not provide its own medical expert with a final letter from Dr. Korn, one of Mr. Campbell's treating physicians, before finally denying his claim.   But there is nothing in the ERISA regulations or our precedent that requires a plan administrator to provide every piece of medical evidence—especially repetitive, conclusory evidence—to the administrator's independent expert before rendering a final decision.   Here, Reliance credited its independent medical expert's detailed report and conclusions, which it found to contradict the conclusory and repetitive diagnoses offered by Mr. Campbell's treating physicians.   This decision was not arbitrary and capricious under this Court's or the Supreme Court's ERISA precedent.   *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003) (("[C]ourts have no warrant to require

[ERISA plan] administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.").

We agree with the district court that Mr. Campbell failed to establish that he was totally disabled. Because we conclude that Reliance's decision was not arbitrary and capricious, our analysis of the denial of Mr. Campbell's application ends. *See Glazer*, 524 F.3d at 1247.

For the reasons set forth above, we affirm the district court's grant of summary judgment in favor of Reliance.

**AFFIRMED.**

9