Patricia W. BUCE, Plaintiff,

v.

NATIONAL SERVICE INDUSTRIES, INC., et al., Defendants.

No. 1:98–CV–112–TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

Nov. 16, 1999.

John Edward Robinson, Gregory H. Blazer, McLarty Robinson & Van Voorhies, William Phillips Tinkler, Jr., Office of William Tinkler, Jr., Decatur, GA, Plaintiff.

Joseph M. English, nam, Howard B. Jackson, Fisher & Phillips, Douglas Neil Campbell, Edward H. Nicholson, Jr., Pamela Byrd Gray, McGuire Woods Battle & Boothe, Atlanta, GA, for Defendants.

## ORDER

THRASH, District Judge.

This action is brought pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA"). At issue is the denial of death benefits under an accidental death policy. The Court previously granted in part and denied in part the motions for summary judgment of the Defendants. On November 8 and 9, 1999, the Court conducted a bench trial regarding Plaintiff's claim for death benefits. The Court's findings of fact and conclusions of law are set forth below.

## FINDINGS OF FACT

1. Mr. Walter H. Buce, Jr. was a long time employee of NSI. He was enrolled in NSI's optional Personal Accident Insurance Plan. Plaintiff Patricia Buce brings this action as the surviving beneficiary for the death benefits provided by the Plan.

2. Mr. Buce died in a car crash while driving on Interstate 75 near Cleveland, Tennessee on December 13, 1995. Around 2:00 A.M., his car struck a guard rail, rolled over, and burst into flames. According to the Tennessee Bureau of Investigation, Mr. Buce had a blood alcohol content of .22%. There were no witnesses to the accident and no other vehicles involved. The coroner's death certificate attributed Mr. Buce's death to multiple third degree burns as a consequence of a motor vehicle wreck.

3. NSI offered the Personal Accident Insurance Plan as an optional fringe benefit of employment. Mr. Buce enrolled in the Plan on or about April 1, 1985. He designated his wife as the beneficiary and elected coverage in the amount of $150,-000. All premiums were paid and the policy was in force and effect at the time of Mr. Buce's death.

4. On or about April 1, 1985, Mr. Buce was given a Summary Plan Description as required by ERISA. The Summary Plan Description and a Certificate of Insurance were included in a booklet entitled Personal Accident Insurance Plan. Based upon the responses of NSI to Plaintiff's interrogatories, the Court finds as a matter of fact that the 1985 Summary Plan Description was the only one ever issued to either Mr. or Mrs. Buce.

5. The Summary Plan Description contains a section entitled "EXCLUSIONS." It lists the following four exclusions for injury or loss due to: (1) riding in an aircraft other than as a passenger for transportation; (2) suicide; (3) war; and (4) service in the armed forces.

6. The Summary Plan Description states: "The insurance company has the exclusive right to interpret the provisions of the Plan, so its decision is conclusive and binding."

7. The Plan was initially underwritten by Firemen's Fund. When NSI changed carriers [1], it issued a new plan booklet and added language to the Summary Plan Description. For example, the new Summary Plan Description added an exclusion for injuries or death caused by or resulting from intoxication. At the time of his death, Mr. Buce was not in possession of the revised Summary Plan Description, and the Defendants have offered no evidence that he ever actually received the revised Summary Plan Description.

8. After her husband's death, Plaintiff submitted a claim for benefits under the plan to NSI. NSI sent the claim to their underwriter, Defendant Allianz Life Insurance Company. Allianz submitted the claim to its third-party administrator, American Special Risk Management (hereafter "ASRM"). At the time, ASRM's sole client was Allianz. ASRM denied the claim based upon an intoxication exclusion. [Joint Ex. 16].

9. The intoxication exclusion is not mentioned in the Summary Plan Description sent to the Buces, but appears in the Certificate of Insurance issued by Fireman's Fund with the Summary Plan Description. The Certificate of Insurance states: "The Company shall not be liable for any loss sustained in consequence of the person whose injury is the basis of the claim being intoxicated or under the influence of any narcotic unless administered on the advice of a physician." [Plaintiff's Ex. 2, pg. 13].

10. The Certificate of Insurance also defines "injury" to mean "bodily injury caused by an accident ... and resulting directly and independently of all other causes ..." [*Id.* at 11].

11. Plaintiff appealed the denial of benefits and submitted affidavits on her behalf to ASRM. The Affidavits are Joint Exhibits 5, 6, 7, 8 and 9.

12. Considering this evidence, Allianz rejected Plaintiff's claim. Allianz, through its attorney, took the position that the policy was an "accidental means" policy which requires that the act preceding the loss must be "sudden, unexpected and unforeseen." Alternatively, and in response to the doctor's affidavit, Allianz took the position that even if Mr. Buce died of a heart attack, this did not constitute an "accident" as defined by the policy. Under the policy, death from a heart attack would be from natural causes. [Joint Ex. 18].

13. After exhausting her administrative remedies, Plaintiff filed this lawsuit pursuant to 29 U.S.C. §§ 1024(b)(1), 1022(a)(1), and 1022(b).

## CONCLUSIONS OF LAW

### A. *ERISA STANDARD OF REVIEW.*

Plaintiff's Complaint alleges violations of the Employee Retirement Income Security

---

**1.** Around 1993, Allianz Life Insurance Co. (f/k/a North American Life and Casualty Co.) became the underwriter for the Plan.

Act of 1974 (ERISA), 29 U.S.C. § 1001, 1140. In adopting ERISA, Congress sought to protect participants in employee benefit plans and their beneficiaries by requiring disclosure and reporting of financial and other information; establishing standards of conduct for fiduciaries of those plans; and providing for appropriate remedies, sanctions, and ready access to the federal courts. 29 U.S.C. § 1001(b). At the outset in an action such as this, the Court must determine the standard by which to review the Defendants' decision to deny the death benefits claimed by Plaintiff. The Act itself does not provide a standard of review for decisions of a plan administrator or fiduciary. In the absence of statutory guidance, the Supreme Court has established a range of standards for judicial review of benefits determinations under ERISA. In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held:

> [A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.... Of course, if a benefit plan gives discretion to an administrator or fiduciary operating under a conflict of interest, that conflict must be weighed as a facto[r] in determining whether there is an abuse of discretion.

*Id.* at 115, 109 S.Ct. 948 (citations and quotation marks omitted).

Consistent with *Firestone*, the Eleventh Circuit has adopted three standards for judicial review of an administrator's benefits determination: (1) *de novo* review where the plan administrator is not afforded discretion; (2) arbitrary and capricious standard when the plan grants discretion to the plan administrator; and (3) heightened arbitrary and capricious standard where there is a conflict of interest. *Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1561 (11th Cir.1990), *cert. denied*, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991);

*Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1449–50 (11th Cir.1997); *Buckley v. Metropolitan Life*, 115 F.3d 936, 939 (11th Cir.1997). Under the heightened arbitrary and capricious standard, the burden shifts to the plan administrator or fiduciary, acting under a conflict of interest, to show that its interpretation of plan terms committed to its discretion was not tainted by self-interest. *Florence Nightingale Nursing Service, Inc. v. Blue Cross/Blue Shield of Alabama*, 41 F.3d 1476, 1481 (11th Cir.1995), *cert. denied*, 514 U.S. 1128, 115 S.Ct. 2002, 131 L.Ed.2d 1003 (1995). The Eleventh Circuit has held that "the heightened arbitrary and capricious standard must be used when the plan was administered by an insurance company which paid benefits out of its own assets." *Buckley*, 115 F.3d at 939. The Eleventh Circuit in *Brown* reasoned that "[b]ecause an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business." *Brown*, 898 F.2d at 1561.

Here, it is undisputed that the *de novo* standard does not apply because of the discretion afforded the insurer by the plan. The Summary Plan Description provides: "The insurance company has the exclusive right to interpret the provisions of the Plan, so its decision is conclusive and binding." The parties disagree as to which of the remaining two standards of review applies. Defendants argue that the proper standard is whether the benefits determination was arbitrary and capricious. *See Guy v. Southeastern Iron Workers' Welfare Fund*, 877 F.2d 37, 38 (11th Cir.1989); *Jett v. Blue Cross & Blue Shield of Alabama, Inc.*, 890 F.2d 1137, 1138 (11th Cir. 1989). They deny that the benefits determination was affected by self-interest. Plaintiff argues for the heightened scrutiny version of the arbitrary and capricious standard. *See Lee v. Blue Cross/Blue Shield of Alabama*, 10 F.3d 1547 (11th Cir.1994).

■ The Court finds that there is a conflict of interest. A judgment in favor of Plaintiff will have to be paid by Allianz. This creates the "direct, immediate expense" that the Court of Appeals in *Brown* identified. *Brown,* 898 F.2d at 1561. There, Blue Cross determined whether it would pay benefits from its own coffers—an inherent and obvious conflict of interest. The situation here differs only slightly with ASRM evaluating Plaintiff's claim for its only client and then a final decision by Allianz. Therefore, the Court may review the determination of benefits under the heightened arbitrary and capricious standard. Application of the heightened standard from *Brown* requires two steps. First, the Court must determine whether under a *de novo* review Plaintiff has offered a sufficiently sound interpretation of the disputed plan provision to rival the Defendants' contrary determination. *Cargile v. Confederation Life Ins. Group Plans,* 748 F.Supp. 874, 878 (N.D.Ga.1990). Second, the Court must determine whether the fiduciary's adoption of the different interpretation was "arbitrary and capricious." *Id.* at 878–79.

## B. *ACCIDENT OR ACCIDENTAL MEANS.*

■ The first question to be addressed is whether the insurance company properly interpreted the Plan by reading into the policy an exclusion for injury or death that is foreseeable based upon such risk increasing behavior as driving while intoxicated. In *Laney v. Continental Ins. Co.,* 757 F.2d 1190 (11th Cir.1985), the Eleventh Circuit addressed this issue in the context of a diversity case applying Georgia law. The decedent in that case died of acute alcohol poisoning; the autopsy showed a blood alcohol content of .47 grams percent. The court recognized that Georgia law distinguishes between the terms "accidental injury" and "injuries resulting from accidental means." *Id.* at 1191. Applying Georgia law, the court concluded that "caused by accident" is synonymous with "accidental means." *Id.* at 1192. "The focus is on the occurrence or

happening which produces the result, not the result itself." *Id.* The court then concluded:

> Given this construction of the policy term, it is evident that the defendant was entitled to judgment as a matter of law. Mrs. Laney does not dispute that her husband intentionally and voluntarily drank the alcohol that caused his death. Nor does she contend that some mischance, slip or mishap occurred during his consumption of the whiskey and beer to cause him to consume more than he intended. Although the result of his drinking was unexpected, the act of drinking was intentional. Georgia law makes it clear that such conduct is not covered by an "accidental means" policy.

*Id. See also Continental Assurance Company v. Rothell,* 227 Ga. 258, 181 S.E.2d 283 (1971). A reasonable person would have foreseen that driving with a blood alcohol level of .22 grams percent was highly likely to result in injury or death. If *Laney* or Georgia law applies to this case, the Court should enter judgment in favor of the Defendants and against the Plaintiff. Nevertheless, it is also unquestionably true that the ordinary purchaser of an accidental death insurance policy would think that the unintentional and unexpected burning to death as a result of a car wreck constitutes death by accident.

The Eleventh Circuit has clearly held that ERISA preempts state law and authorizes federal courts to create federal common law to implement Congress' statutory scheme. *Branch v. G. Bernd Co.,* 955 F.2d 1574, 1580 (11th Cir.1992). In this case, the Court is faced with the question of whether to frustrate the statutory scheme of ERISA by adhering to the metaphysical distinction between "accidental means" and "accidental results" that has bedeviled the courts for more than 60 years. In *Landress v. Phoenix Mut. Life Ins. Co.,* 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934 (1934), the insured died after suffering sunstroke. The majority said that since the insured voluntarily exposed himself to

the sun and there were no unforeseen intervening causes, the death was not caused by accidental means. Justice Cardozo dissented:

> The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog. Probably it is true to say that in the strictest sense and dealing with the region of physical nature there is no such thing as an accident.... On the other hand, the average man is convinced that there is, and so certainly is the man who takes out a policy of accident insurance. It is his reading of the policy that is to be accepted as our guide, with the help of the established rule that ambiguities and uncertainties are to be resolved against the company.... When a man has died in such a way that his death is spoken of as an accident, he has died because of an accident, and hence by accidental means....

*Id.*, 291 U.S. at 499, 54 S.Ct. 461. Unfortunately, Justice Cardozo's prophesy was fulfilled. Fortunately, however, the clear trend in recent years has been to climb out of the Serbonian Bog. Unquestionably, the Congressional purpose of protecting the interests of ERISA beneficiaries would be promoted by following this trend.

The Supreme Court of Tennessee recently addressed this issue in the case of *Harrell v. Minnesota Mutual Life Ins. Co.*, 937 S.W.2d 809 (Tenn.1996). It noted that the view of Justice Cardozo has now gained the support of the great majority of jurisdictions. The court cited one well respected authority in the field as follows:

Almost every action we take has some element of design; if we drive an automobile upon the highway, where another collided with us, could this not have been foreseeable, or at least within the realm of potential so far as the "means" were concerned? Every instance where a person walks, or jumps, and slips or falls, comes within a like category. To permit a rigid construction of such expressions is to permit a deception to be practiced upon the public....

*Id.* at 813 (citing 1A Appleman, Insurance Law & Practice, § 363 at p. 492 (1981 & Supp.1995)). The court then observed:

> Although a few courts in other jurisdictions still cling to the distinction, most courts have either abolished the distinction or refused to recognize it in the first place when considering whether a particular death or injury is accidental. Under the more recent cases, the unexpected consequences of an individual's voluntary behavior provide the accidental element for purposes of an insurance policy.

*Id.* (footnotes omitted). The Tennessee court also recognized, as have other courts, that the distinction between accidental means and accidental results distorts the law in "that it subjects contract terms to analysis under tort principles, such as fault and foreseeability." *Id.* at 814 (citing *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205, 206 (Ky.1986)). The court concluded:

> According, [*Mutual Life Ins. Co. of New York v. Distretti*, 159 Tenn. 138, 17 S.W.2d 11 (1929) ], its progenitors and progeny are overruled.[2] From this day forward, in Tennessee law there is no

---

**2.** A couple of the cases relied upon by Allianz relied upon *Distretti* or its progeny to deny benefits in drunk driving cases. *See Smith v. Life Ins. Co. of North America*, 872 F.Supp. 482 (W.D.Tenn.1994); *Fowler v. Metropolitan Life Ins. Co.*, 938 F.Supp. 476 (W.D.Tenn. 1996). Others involved different policy provisions. *See Cates v. Metropolitan Life Ins. Co.*, 149 F.3d 1182, 1998 WL 385897 (6th Cir. 1998) (policy excluded coverage for injuries contributed to by drug/alcohol use); *Wickman v. Northwestern National Insurance Company,*

908 F.2d 1077 (1st Cir.1990) (policy defined "accident as an unexpected, external, violent, and sudden event"); *Walker v. Metropolitan Life Insurance Company*, 24 F.Supp.2d 775 (E.D.Mich.1997) (policy excluded coverage for "injuring yourself on purpose"); *Nelson v. Sun Life Assurance Co.*, 962 F.Supp. 1010 (W.D.Mich.1997) (exclusion for self-inflicted injuries); *Morton v. Smith*, 91 F.3d 867 (7th Cir.1996) (applying exclusion for self inflicted injuries).

distinction between "accidental death" and death by "accidental means" in determining coverage under an insurance policy. Instead, if death is the unanticipated and unexpected result of an intentional, voluntary act, it is accidental in the ordinary and plain sense of the word and recovery is available under an accidental death insurance policy. Accidental deaths or injuries which are included within this definition, but which the insurance company does not intend be covered, can be specifically excluded in the insurance policy.

*Id.* at 814–815. *See also Wickman v. Northwestern Nat. Ins. Co.,* 908 F.2d 1077, 1088 (1st Cir.1990) ("Generally, insureds purchase accident insurance for the very purpose of obtaining protection from their own miscalculations and misjudgments").

At trial, counsel for Allianz clearly articulated the insurance company's interpretation of the policy. According to counsel, any conduct that increases the risk to the insurance company above and beyond the risk of "normal" behavior is a foreseeable cause of injury and is not covered by the policy. This is the logical end result of reading a foreseeability exclusion into the policy. Nevertheless, there are a number of problems with this interpretation of the policy, all of which are well recognized by the commentators and leading cases in this area. First, the policy itself says nothing about excluding foreseeable injuries. Allowing the insurance company to escape from providing the coverage which it promised in the policy is to sanction the deception of the public described by Appleman. Second, reading a foreseeability exclusion into the policy serves no public interest. *See Miller v. American Cas. Co. of Reading, Penn.,* 377 F.2d 479, 480 (6th Cir.1967) (no mandate in law or public policy to imply an intoxication exclusion when none was agreed on by the parties when the insurance contract was signed). The insurance company gets a windfall for collecting premiums (in this case for 10 years) based upon the appearance of providing coverage for what the average insured would consider an accident. Denying coverage after the fact does not provide an incentive to the insured to modify his behavior because the exclusion is undisclosed, and serves only to punish the beneficiaries, such as the widow in this case, that the insured thought he was protecting. If the insurance company does not want to insure certain risks, such as driving while intoxicated, it should include an explicit exclusion to that effect in the policy. That will give the insured the incentive not to engage in the risky behavior. In fact, that is what the insurance company did by putting certain exclusions in the policy. For example, there is a suicide exclusion. It is foreseeable that a suicide attempt will result in serious injury or death. If the policy already excluded coverage for foreseeable injuries, there was no need for a suicide exclusion unless this was part of a trick to deceive the public into thinking that the policy really provided the sort of coverage the average insured would expect.

Finally, the insurance company's interpretation of the policy takes us into a sub-Serbonian Bog when we try to define what is "normal" behavior. Driving on the interstate highways in Atlanta increases the risk of a serious car wreck as compared to sticking to the surface streets. Is this not normal behavior? Driving in excess of the speed limit increases the risk of a serious car wreck. Is this not normal behavior? The undersigned enjoys standing in the middle of big rivers casting bits of hair and fur at fish. This certainly increases the risk of drowning as compared to staying at home and sitting on the couch. Is this not normal behavior? Is the judge's widow to be deprived of protection because of his piscatorial pursuits?

For all of these reasons, the Court is persuaded that the developing ERISA federal common law should not fall back into Justice Cardozo's Serbonian Bog. There is no controlling Eleventh Circuit authority to the contrary because *Laney* was a diversity case and did not involve ERISA

federal common law. *Schultz v. Metropolitan Life Ins. Co.*, 994 F.Supp. 1419, 1421 (M.D.Fla.1997). The Eleventh Circuit has clearly stated the process for determining ERISA common law:

> To decide whether a particular rule should become part of ERISA's common law, courts must examine whether the rule, if adopted, would further ERISA's scheme and goals. ERISA has two central goals: (1) protection of the interests of employees and their beneficiaries in employee benefit plans; and (2) uniformity in the administration of employee benefit plans.

*Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1041 (11th Cir.1998) (citations omitted). Reading a foreseeability exclusion into the policy would frustrate the Congressional purpose of protecting ERISA plan beneficiaries. It would not contribute to uniformity in the administration of employee benefit plans. A foreseeability exclusion contributes to uncertainty and difficulty of administration. "[A]n insured should not have to consult a long line of case law or law review articles and treatises to determine the coverage he or she is purchasing under an insurance policy." *Harrell*, 937 S.W.2d at 814.

For the reasons set forth above, the Court finds that Allianz applied an incorrect legal standard to the determination of whether Mr. Buce died as a result of an accident. Allianz had a conflict of interest in making this determination because its restrictive interpretation of the policy allowed it to deny the claim and save the money it would have paid if the claim had been allowed. This conflict of interest may be considered in applying the heightened arbitrary and capricious standard of review. Plaintiff's deceased husband purchased an insurance policy to protect his family in case of accidental death. He paid the premiums on the policy for more than 10 years, Death as a result of a car wreck is the quintessential accident under the general understanding of that term. It is arbitrary and capricious for an insurer to deny a claim based upon an interpretation of "accident" that is not stated in the policy and that is contrary to the expectations of the ordinary insured. Therefore, the Court finds in favor of the Plaintiff with respect to the defense that Mr. Buce did not die as a result of an accident.

## C. *THE INTOXICATION EXCLUSION.*

■ With respect to Defendant's alternative ground for denial of the claim, Plaintiff has shown that a *de novo* review could produce a determination contrary to Defendants' denial of benefits. The 1985 Summary Plan Description did not contain an intoxication exclusion. Allianz denied Plaintiff's claim alternatively in reliance upon the intoxication exclusion found in the 1993 plan booklet. The Court finds as a matter of fact that the Buces never received this plan booklet. Therefore, the 1985 Summary Plan Description is a controlling. "The statute requires that the SPD (summary plan document) be comprehensive and accurate and relate information in a way that the average plan participant can understand." *Thompson v. Federal Express Corp.*, 809 F.Supp. 950, 956 (M.D.Ga.1992) (*citing* 29 U.S.C. § 1022(a)(1)). When a summary plan document[3] conflicts with the plan, the summary controls. *McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566, 1570 (11th Cir.1985). The 1985 Summary Plan Description contained a list of policy exclusions that did not include an exclusion for injuries due to intoxication. Plaintiff testified that she relied upon the 1985 Summary Plan Description in deciding not to request an immediate autopsy. This testimony was uncontradicted and the Court accepts it as credible. This satisfies the requirement of reliance. *Branch*, 955 F.2d at 1579.

*Hicks v. Fleming Cos.*, 961 F.2d 537 (5th Cir.1992)

---

**3.** It is undisputed that the summary received by the Buces qualifies as a summary plan document within the meaning of ERISA. *See*

As noted above, the insurance company had a direct conflict of interest when it denied the claim based upon the intoxication exclusion. The Court must evaluate whether Defendants have "justifie[d] their [determination] on the ground of its benefit to the class of all participants and beneficiaries." *Cargile*, 748 F.Supp. at 879. Defendants have offered no evidence to show that their determination benefits the class. As held in *Brown*, "[t]he presumption that the fiduciary is acting for the future stability of the fund cannot be entertained." *Brown*, 898 F.2d at 1568. Defendants may "purge the taint of self-interest" only by showing that "the facts ... bear out [its] assertion that its interpretation of its policy is calculated to maximize the benefits available to plan participants and beneficiaries at a cost the plan sponsor can afford (or will pay)." *Id.* Defendants have not made such a showing. Denying benefits based upon an unenforceable exclusion that was not contained in the Summary Plan Description is arbitrary and capricious. Thus, in the final analysis, the result is the same whichever standard of review is employed. The denial of benefits was arbitrary and capricious and the Plaintiff is entitled to the death benefit due under the Plan.

### CONCLUSION

In summary, Mr. Buce died in an accident and his widow is entitled to the death benefit for which he paid the premiums due for more than 10 years. The Clerk is directed to enter judgment in favor of the Plaintiff in the principal amount of $150,000 with prejudgment interest at the rate of seven (7%) percent per annum from March 12, 1996 (the date the claim was initially denied) through the date of judgment, plus post-judgment interest and costs against the Defendant Allianz Life Insurance Company, f/k/a North American Life and Casualty Company. The Plaintiff's application for attorney's fees and expenses shall be submitted in accordance with Local Rule 54.2. The Plaintiff having failed to show a breach of fiduciary duty by Defendants National Service Industries

Inc., American Special Risk Management Corporation and National Service Industries Personal Accident Insurance Plan, the Clerk is directed to enter judgment in favor of those Defendants as to this claim.