CARNES, Circuit Judge,
concurring in the result:
I concur in the reversal of the district court’s judgment because I reach the same bottom line conclusion as the majority about Allianz’s decision to deny Patricia Buce’s claim for death benefits — the denial was not arbitrary and capricious under the heightened standard of review. But I arrive at that conclusion by a different route than the majority. The route the majority follows involves a holding that ERISA does not preempt state law definitions of plan terms when those definitions are incorporated into the plan by a choice-of-law provision. That holding on an important issue of first impression in this circuit may be correct. Or it may not be.
Some other courts appear to have decided the issue differently. Those other courts have held that ERISA’s preemption provision, among the broadest ever drafted by Congress, does preempt state law specified in plan choice-of-law provisions. See Prudential Ins. Co. of Am. v. Doe, 140 F.3d 785, 790-91 (8th Cir.1998) (holding, in light of the “broad preemptive scope of ERISA,” that “[t]he choice of law provision in the [benefits plan] does not alter the outcome here, for parties may not contract to choose state law as the governing law of an ERISA-governed benefit plan”); Morton v. Smith, 91 F.3d 867, 871 (7th Cir.1996) (dictum) (choice-of-law provision does not control because the “federal common law of ERISA preempts most state *1155 law in regulating the interpretation of benefit plans”); In re Sears Retiree Group Life Ins. Litig., 90 F,Supp.2d 940, 950-51 (N.D.Ill.2000) (“A choice of law provision does not operate to waive the applicability of federal law regarding interpretation of an ERISA plan.”). All of the cited decisions agree that choice-of-law provisions have no effect where, as here, the attempt is to choose state law as the source of interpretation for the terms of an ERISA plan.
I find it unnecessary to decide the ERISA preemption issue the majority addresses, or any other issue relating to how the Plan term “caused by an accident” is defined, because in my view Mrs. Buce’s claim is precluded by the Plan’s intoxication exclusion. That exclusion provides that “[Allianz] shall not be liable for any loss sustained in consequence of the person whose injury is the basis of claim being intoxicated.”
Mr. Buce was exceedingly intoxicated when he died — a posthumously drawn blood sample measured his blood alcohol content at .22 percent, more than twice the legal limit. See O.C.G.A. § 40 — 6—391(a,)(5) (.10 legal limit). The circumstances of Mr. Buce’s death are that while driving drunk on an Interstate highway at 2:00 a.m., he lost control of his automobile and struck a guard rail. There was no evidence of a mechanical problem, no visible hazards, and no skid marks. The weather was clear and the highway was straight. His death was tragic, but the circumstances of it are all too typical of the thousands of alcohol-related traffic deaths that occur on our highways each year. See Michigan Dep’t of State Police v. Sitz, 496 U.S. 444, 451, 110 S.Ct. 2481, 2485-86, 110 L.Ed.2d 412 (1990) (“Drunk drivers cause an annual death toll of over 25,000 and in the same time span cause nearly one million personal injuries and more than five billion dollars in property damage.”) (footnote omitted) (quoting 4 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 10.8(d), p.71 (2d ed.1987)). Mr. Buce’s death represents a statistically predictable loss that the Plan in this case, like many other insurance policies, explicitly excludes. That exclusion is an independent, non-arbitrary basis that Allianz relied upon in denying death benefits.
The district court concluded that denying benefits on the basis of the intoxication exclusion was arbitrary and capricious for one reason: the 1985 summary plan description, the only one the Buces ever received, did not mention the Plan’s intoxication exclusion. Buce v. National Serv. Inds., Inc., 74 F.Supp.2d 1272, 1279-80 (N.D.Ga.1999). The district court reasoned that where a plan and a summary plan description are inconsistent, the terms of the summary description control. Id. at 1279. Here, the district court determined that the two were inconsistent because the Plan contained an intoxication exclusion which the summary plan description did not mention. Id. Accordingly, the court concluded that Allianz’s denial of death benefits on the basis of that exclusion was arbitrary and capricious under our heightened standard of review. Id. at 1280.
ERISA contemplates that the summary plan description will be the employee’s primary source of information regarding benefits, and employees are entitled to rely on the description contained in it. See 29 U.S.C. § 1022(a) (“The summary plan description ... shall be sufficiently accurate and comprehensive to reasonably apprise ... participants and beneficiaries of their rights and obligations under the plan.”); 29 C.F.R. § 2520.102-2(a). We have held that when a plan and its summary description conflict, and the employee or beneficiary demonstrates the requisite reliance, *1156 the terms of that description determine her eligibility for benefits. McKnight v. Southern Life & Health Ins. Co., 758 F.2d 1566, 1570 (11th Cir.1985). As we explained in McKnight, “It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document, and then proclaim that any inconsistencies will be governed by the plan. Unfairness will flow to the employee for reasonably relying on the summary booklet.” 758 F.2d at 1570. The district court credited Mrs. Buce’s testimony that if the summary plan description had not omitted mention of the intoxication exclusion, she would have requested that an immediate autopsy be performed on her husband. That testimony, the district court concluded, satisfied the requirement of rebanee. Buce, 74 F.Supp.2d at 1279.
I disagree. Mrs. Buce’s testimony showed reliance, but it did not show detrimental reliance. In my view, Mrs. Buce was required to go beyond a simple showing that she acted or failed to act in some respect because of the Summary Plan Description’s omission of the intoxication exclusion. In this context, a requirement of rebanee includes a showing of detriment. While we have never squarely held that an employee or beneficiary must show that her reliance on a statement or omission in the summary plan description was detrimental, we have indicated that she must. In Branch v. G. Bernd Co., 955 F.2d 1574 (11th Cir.1992), the terms of the plan specified an election period for obtaining continued coverage that differed from the election period given in the summary plan description. We held that the plan’s terms, and not those of the summary plan description, governed the plaintiffs eligi-bihty for benefits, because the plaintiff had provided “no evidence ... [that he had] ever read or rebed on the summary.” Id. at 1579-80. To be sure, the holding of Branch is simply that a plan trumps a summary plan description where there is no reliance at all, and there was no occasion to decide in that case whether the reliance required is detrimental reliance. See also Collins v. American Cast Iron Pipe Co., 105 F.3d 1368, 1371 (11th Cir.1997) (plaintiff did not rely on faulty summary plan description because he did not read it until after he had filed his lawsuit).
But our discussion in Branch did provide an example of the kind of evidence that would satisfy the reliance requirement, and that example suggests that a showing that the reliance was detrimental is necessary in order to prevail on the basis of an omission in the summary plan description. We said:
a beneficiary who receives a summary that omits the plan’s limit on the election period could prove reliance with evidence that the beneficiary received and read the summary and failed to make a timely election based on the belief that there was no time limit.
Branch, 955 F.2d at 1579 n. 2.1 believe the negative implication of that dicta is correct. An employee or beneficiary is not harmed by non-detrimental reliance, and we ought not disregard a plan’s otherwise controlbng terms because of an omission from a summary plan description in the absence of harm. See Maxa v. John Alien Life Ins. Co., 972 F.2d 980, 984 (8th Cir.1992) (“[I]n order to recover for a faulty plan summary, appebant must ... show that [he] took action, resulting in some detriment, that [he] would not have taken had [he] known [that the terms of the plan were otherwise].”) (internal quotes and citation omitted).[1]
*1157 Mrs. Buce has not made the required showing of detrimental reliance. Detrimental reliance or actual harm from a summary plan description’s inconsistency with the plan can be shown by evidence that because of that inconsistency the employee or beneficiary took or failed to take some action that prejudiced her claim for benefits under the ERISA plan. I accept the district court’s credibility determination, and take as given that Mrs. Buce would have ordered an autopsy soon after her husband’s death had the summary plan description informed her of the Plan’s intoxication exclusion. I also accept her representation in this Court (although it stretches her testimony in the district court) that if she had known of the intoxication exclusion, she would have sought an investigation of the accident, an accident reconstruction, an examination of the vehicle, or all of those things. However, Mrs. Buce has provided no evidence that her failure to take any or all of those actions prejudiced her in regard to her claim for death benefits. We know Mr. Buce was extremely intoxicated when he died. We know the circumstances of the wreck. We also know that there is no evidence indieat-ing that an autopsy, an accident reconstruction, or any additional investigation of the wreck would have pointed to anything other than the obvious, which is that serious injury or death are the all too predictable results of driving in a highly inebriated state. So, Mrs. Buce presented no evidence that her reliance on the summary plan description’s omission of the intoxication exclusion worked to the actual detriment of her claim.[2]
Detrimental reliance or actual harm from a summary plan description’s inconsistency with the plan can also be shown by evidence that, but for the inconsistency, the employee or beneficiary would have obtained other insurance which would have paid benefits. But there is absolutely no evidence that if the summary description had referred to the intoxication exclusion either Mr. or Mrs. Buce would have purchased some other insurance policy that did not have such an exclusion.
I join the majority’s reversal of the district court’s judgment which set aside Al-lianz’s denial of Mrs. Buce’s death benefits claim. I would, however, base that reversal *1158 on the Plan’s intoxication exclusion, and not on an interpretation of the Plan’s terras drawn from Georgia law applied through the choice-of-law provision.

. Other courts have suggested the same proposition in dicta. See Health Cost Controls of *1157 Ill., Inc. v. Washington, 187 F.3d 703, 711 (7th Cir.1999) ("When ... the plan and the summary plan description conflict, the former governs ... unless the plan participant or beneficiary has reasonably relied on the summary plan description to his detriment."); Stamper v. Total Petroleum, Inc., 188 F.3d 1233, 1243 (10th Cir.1999) ("Appellants make no claim that they actually detrimentally relied on the SPD."). But see Aiken v. Policy Mgmt. Sys. Corp., 13 F.3d 138, 141 (4th Cir.1993) (stressing that ERISA claimant must show either "significant reliance” or "possible prejudice”); Edwards v. State Farm Mut. Auto. Ins. Co., 851 F.2d 134, 137 (6th Cir.1988) (claimant need not show detrimental reliance). Many of the courts that have considered this issue, however, have imposed the somewhat cryptic requirement that the employee or beneficiary show "some significant reliance upon, or possible prejudice flowing from, the faulty plan description.” Govoni v. Bricklayers, Masons and Plasterers Int’l Union of Am., Local No. 5, 732 F.2d 250, 252 (1st Cir.1984); see, e.g., Gridley v. Cleveland Pneumatic Co., 924 F.2d 1310, 1319 n. 8 (3d Cir.1991).

. Mrs. Buce was given an opportunity in the district court to identify any detriment that she suffered from failing to take any steps she might have taken had she known of the intoxication exclusion. For example, the following exchange took place at trial:
Q: So you're not contending now that there is any specific thing or things that you think an autopsy would or might have revealed that might bear one way or another on this particular case; is that what you’re saying?
R: I don't know what an autopsy would reveal.