**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-11898

Non-Argument Calendar

————————————

ABIGAIL GOMEZ,

*Plaintiff-Appellant,*

*versus*

NEIGHBORHOOD HEALTH PARTNERSHIP, INC.,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-23823-KMW

————————————

Before LAGOA, ABUDU, and WILSON, Circuit Judges.

PER CURIAM:

Abigail Gomez appeals an order of the district court granting summary judgment to Neighborhood Health Partnership, Inc. ("Neighborhood Health") in her suit seeking reimbursement for

health care benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA").[1]  At bottom, she contends that Neighborhood Health improperly denied her medical claims for reimbursement.  After careful review, we affirm.

## I.    FACTUAL BACKGROUND

Gomez has an insurance plan with Neighborhood Health.[2] Her plan covers certain in-network and out-of-network medically necessary treatments.[3]  Prior to 2019, Gomez had undergone three

---

[1] *See Gomez v. Neighborhood Health P'ship, Inc.*, No. 1:22-cv-23823, 2024 WL 2132878 (S.D. Fla. Apr. 1, 2024), *report and recommendation adopted*, 2024 WL 2955733 (S.D. Fla. May 13, 2024).  Gomez's suit also challenged Neighborhood Health's handling of another set of claims, associated with another doctor, Dr. Toriumi.  However, Gomez did not seek appellate review of the district court's resolution of that portion of the suit nor the district court's denial of her motion to allow discovery, so we do not address these matters here.  *See United States v. Campbell*, 26 F.4th 860, 871 (11th Cir. 2022) (*en banc*).

[2] Neighborhood Health is a wholly owned subsidiary of UnitedHealthcare, Inc, which is a subsidiary of United Healthcare Services, Inc., an organization which is, in turn, a subsidiary of UnitedHealth Group Inc. (together, "UnitedHealth").  Portions of the administrative review were performed by UnitedHealth, but, for consistency, we refer to the appellee and its affiliated entities as Neighborhood Health.

[3] Under Gomez's policy, the insurer deems medically necessary services to be those: (i) "[i]n accordance with Generally Accepted Standards of Medical Practice"; (ii) "[c]linically appropriate, in terms of type, frequency, extent, service site and duration, and considered effective for [the insured's] Sickness, Injury, Mental Illness, substance-related and addictive disorders, disease or its symptoms"; (iii) "[n]ot mainly for . . . convenience or that of [a] doctor or other health care provider"; and (iv) "[n]ot more costly than an alternative drug, service(s), service site or supply that is at least as likely to produce equivalent therapeutic or diagnostic results as the diagnosis or treatment of [the] Sickness,

24-11898                Opinion of the Court                3

different nasal surgeries to address breathing problems and subsequent unsatisfactory cosmetic and physiological results.

In July 2019, Neighborhood Health granted Gomez's request for coverage of certain medical procedures for her nasal-related health problems under the following CPT codes: 20910, 20912, 30450, and 30465.[4]    The authorization form defined

Injury, disease, or symptoms." The plan then defines "Generally Accepted Standards of Medical Practice" to be "standards that are based on credible scientific evidence . . . ." The plan also specifies that Neighborhood Health retains "the right to consult expert opinion in determining whether health care services are Medically Necessary."

[4] "CPT codes," such as these, "are a national uniform coding structure created for use in billing and overseen by the American Medical Association." *United States v. Moss*, 34 F.4th 1176, 1181–82 (11th Cir. 2022). These four codes correspond with the following procedures, respectively: (1) cartilage graft; costochondral, (2) cartilage graft; nasal septum, (3) rhinoplasty, secondary; major revision (nasal tip work and osteotomies), and (4) repair of nasal vestibular stenosis (*e.g.*, spreader grafting, lateral nasal wall reconstruction). *Cf. id.* at 1182 ("One type of procedure or service can have more than one CPT code because the same procedure may, in some cases, be more complex than in others."). Gomez's plan excludes cosmetic procedures. Under the plan, reconstructive procedures "that correct anatomical Congenital Anomaly without improving or restoring physiologic function are considered Cosmetic Procedures." Rhinoplasties—under Codes 30410 and 30420—are considered reconstructive and medically necessary when seven listed criteria are met, which, broadly speaking, require the insured to show prolonged and significant symptoms, caused by a nasal obstruction which has been documented photographically and a lack of viable alternative procedures or treatments. Rhinoplasties under Codes 30430, 30435, 30450, and 30400, however, are considered "primarily cosmetic" and are only considered "reconstructive and medically necessary" when five criteria are met, which, broadly speaking, require similar symptoms and documentation.

"medically necessary" as a "service [that] meets accepted standards of medicine and is needed to prevent, diagnose, or treat an illness, injury, condition, disease, or its symptoms." It also stated that, "[a] network provider is a doctor . . . that has a contract with us to provide services or supplies at an agreed upon rate . . . ." Gomez's plan specifies that Neighborhood Health "require[s] prior authorization for certain [c]overed health [c]are Services" and that "[n]etwork providers are responsible for obtaining prior authorization" before offering services. The plan states that when an insured receives services "from out-of-[n]etwork providers, [the insured] is responsible for obtaining prior authorization." The plan also provides that prior authorization is "made based on the services" the insured actually receives, and if the authorized services differ from the ones actually received, coverage will be offered only for the services provided that are included in the benefits.

The preauthorization form designated Dr. Richard Davis as the treating physician. Despite this preauthorization, Dr. Davis decided not to perform the procedures because, in his professional opinion, the trauma Gomez's nose had already experienced made the "risk of complications from cosmetic surgery . . . simply too high." However, because Gomez wanted to proceed with treatment, Dr. Davis referred her to Dr. Jeffrey Epstein. Gomez never sought to amend the preauthorization form to designate Dr. Epstein as the treating physician, nor did she submit a completely new health services request. Nevertheless, in October 2019, Dr. Epstein performed a nasal surgery consisting of several procedures and

then billed Neighborhood Health directly using a different set of procedure codes:  30410, 30520, and 30465.[5]

In May 2020, Neighborhood Health informed Gomez and Dr. Epstein that this operation was not covered for several reasons, including because it was not "medically necessary," and the services billed were different from the services provided—in other words, Dr. Epstein submitted billing codes for services that were not completed.  An additional letter provided to Gomez stated that the service she received had "not been proven effective for the documented clinical circumstances" and was "not medically necessary," and was therefore not a covered benefit under the plan.

In September 2021, Gomez, through her attorney, requested a review of this determination, submitting a letter outlining the reasons why Neighborhood Health should have provided coverage, a copy of the original denial documentation, the preauthorization for Dr. Davis's procedure, and an operative note from Dr. Epstein.  In October 2021, Neighborhood Health affirmed its decision and stated that the services she received were cosmetic, rather than medically necessary.  Dr. Donald Stepita, a UHC medical director specializing in plastic surgery with a background in general surgery, conducted the review and issued the determination.

---

[5] These codes correspond with the following procedures, respectively: (1) rhinoplasty, primary; complete, external parts including body pyramid, lateral, and alar cartilages, and/or elevation of nasal tip, (2) septoplasty or submucous resection, with or without cartilage scoring, contouring, or replacement with graft, and (3) repair of nasal vestibular stenosis (*e.g.*, spreader grafting, lateral nasal wall reconstruction).

Dr. Stepita explained that key portions of Dr. Epstein's operation that would have made the treatment medically necessary—septoplasty and repair of vestibular stenosis—were not actually performed, and that there was a lack of documentation that the remaining procedures performed would improve physiologic function. Dr. Stepita accordingly agreed with Neighborhood Health's original denial because the operation Dr. Epstein had performed was cosmetic, not medically necessary, unlike the previously approved procedure.

Gomez again appealed the decision. In support of her second-level appeal, Gomez submitted a letter outlining the reasons she believed Neighborhood Health should change its decision—which used much of the same language as the letter she submitted in her September 2021 appeal—as well as copies of the October 2021 denial letter, the letter from Dr. Davis informing Gomez that he would no longer perform the surgery, the pre-authorization for Dr. Davis's planned procedure, the original denial letter, notes from Dr. Epstein from the day of the procedure, and follow-up notes. The clinical documentation from Dr. Epstein was limited to one page of billing information with brief diagnosis details, an operative note describing the procedure Dr. Epstein performed with the justification for it, and handwritten notes—some of which are fairly illegible. It is clear from his notes, however, that Gomez was "quite unhappy with the esthetic results" of prior surgeries and that the procedure he performed on the tip of her nose was "to create a more esthetic appearance." Even though Dr. Epstein had submitted codes to Neighborhood Health that indicated that a septoplasty

had been performed on Gomez, that procedure was not discussed or mentioned in any of the notes submitted.

In November 2022, Neighborhood Health issued a final denial of coverage. In this denial, Dr. Christine Haugen—a UHC medical director specializing in plastic and reconstructive surgery with a background in general surgery—once again stated that Gomez's plan covered medically necessary treatments and that the documentation provided by Dr. Epstein did not reveal completion of a procedure that would make a cosmetic reconstructive surgery medically necessary. Dr. Haugen highlighted other requirements for medically necessary treatments that were not met, including the location where the surgery was performed,[6] and the lack of "a serious medical illness."

## II.    PROCEDURAL HISTORY

After her unsuccessful appeals process with Neighborhood Health, Gomez filed suit in November 2022 in district court. As relevant, her complaint alleged that the denial of benefits discussed

---

[6] United Healthcare's policies state that "an elective surgical procedure performed in a hospital outpatient department" such as the one where Gomez received her surgery, "is considered medically necessary if there is an inability to access an ambulatory surgical center for the procedure" because there is no geographically accessible ambulatory surgical center ("ASC") with the needed equipment, no ASC where the insured's physician has privileges, or an ASC's specific guidelines prevent the insured from accessing the facility. The final denial letter stated that Gomez's records did "not show that there were no . . . ASCs . . . in [her] area" and that "[t]hese [services] could have been done at an ASC."

above constituted a violation of section 502(a) of ERISA. Neighborhood Health moved for summary judgment in November 2023, making largely the same arguments it does on appeal—that its decision to deny coverage and reimbursement was correct and that there were reasonable grounds to support the denial which were not outweighed by any structural conflict of interest caused by the fact that Neighborhood Health determines eligibility for benefits and pays claims out of its own assets.[7] Gomez also made largely the same arguments in her response to the motion for summary judgment as she does on appeal—that Neighborhood Health's decision was neither correct nor reasonable and that Neighborhood Health had ignored evidence that she was entitled to coverage and had acted arbitrarily by giving multiple explanations for denying coverage.

In April 2024, a magistrate judge issued a report and recommendation ("R&R") which recommended that the court grant

---

[7] In the ERISA context, the Supreme Court has explained "the fact that a plan administrator both evaluates claims for benefits and pays benefits claims creates" a "conflict of interest" relevant to a court's analysis of the administrator's decision. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). Even so, this "pertinent" conflict of interest is just one factor we consider in determining whether a decision is arbitrary and capricious. *Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011). Here, we agree with the magistrate judge and district court in finding no evidence that the conflict in this case had "inherent or case-specific importance" sufficient to find Neighborhood Health acted arbitrarily and capriciously. *Id.* at 1357 (quoting *Glenn*, 554 U.S. at 117). Accordingly, while the issue weighs into our analysis, as noted below, we do not discuss it at length.

Neighborhood Health's motion for summary judgment. The magistrate judge concluded that Neighborhood Health's decision "was correct" under *de novo* review, but that "[n]onetheless, the decision was not arbitrary and capricious even assuming [the] denial was *de novo* wrong." The magistrate judge explained there were some differences between the procedures Dr. Davis originally planned to perform and the ones that Dr. Epstein actually performed. It also found that the plan contained no provision allowing a prior approval for specific health services to automatically transfer to an undesignated treating physician. The R&R also determined Neighborhood Health reasonably relied on its reviewing specialists' opinions in denying Gomez's claim. Overall, the magistrate judge found that Neighborhood Health had followed proper procedures in a reasonable manner, and that its decision was not arbitrary.

Gomez objected to the R&R, arguing again that the medical records and coverage guidelines supported her contention that the procedure was medically necessary and that Neighborhood Health and the magistrate judge had ignored that relevant evidence in coming to the opposite conclusion. The district court reviewed the R&R and issued an order affirming and adopting the R&R and granting Neighborhood Health's motion for summary judgment. Gomez timely appealed.

## III.    STANDARD OF REVIEW

"We review the district court's grant of summary judgment *de novo*, construing all facts and drawing all reasonable inferences in favor of the non-moving party." *Guevara v. Lafise Corp.*, 127 F.4th

824, 828 (11th Cir. 2025). "Summary judgment is appropriate when no genuine dispute of material fact exists and a party is entitled to judgment as a matter of law." *Id.* at 828–29. "A dispute of fact is genuine if a reasonable jury could return a verdict for the non-moving party." *Id.* at 829.

## IV.  DISCUSSION

In ERISA cases, our circuit employs the following test when reviewing a plan administrator's decision regarding an insured's entitlement to benefits:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (*i.e.*, the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious."

*Blankenship*, 644 F.3d at 1355 (italics added) (citing *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010)); *see also Stewart v. Hartford Life & Accident Ins. Co.*, 43 F.4th 1251, 1254 (11th Cir. 2022).

The arbitrary-and-capricious standard is a considerably high one: an administrator's decision must merely have a reasonable basis. *Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989); *see also, e.g.*, *Florida v. HHS*, 19 F.4th 1271, 1290 (11th Cir. 2021) ("The arbitrary and capricious standard is 'exceedingly deferential.'" (quoting *Miccosukee Tribe of Indians of Fla. v. United States*, 566 F.3d 1257, 1264 (11th Cir. 2009))). A plan administrator may accord different weight to the opinions and evidence submitted as part of the review without acting arbitrarily and capriciously. *Blankenship*, 644 F.3d at 1356; *see also Black v. Long Term Disability Ins.*, 582 F.3d 738, 746 (7th Cir. 2009) ("[U]nder our deferential standard of review, we must defer to [the plan administrator's] choice between competing medical opinions so long as it is rationally supported by record evidence.").

On appeal, Gomez contends that Neighborhood Health's decision was incorrect and that the coverage guidelines, if properly applied to her medical records, show that the procedures Dr. Epstein performed were medically necessary to address her nasal-

related breathing problems..  She identifies specific language in the plan regarding the various procedure codes to explain why the plan should cover Dr. Epstein's services.  She also repeatedly argues that the fact that Neighborhood Health granted authorization to Dr. Davis was, in and of itself, evidence that she had met the "medically necessary" criteria for nasal surgery.  Gomez further contends that the fact that Neighborhood Health offered multiple bases for denying coverage is evidence that its decision was arbitrary and capricious.  Finally, she argues the district court and magistrate judge failed to address her legal arguments, the "overwhelming evidence" in her medical record, and the "inherent nature of ERISA law" in ruling against her.

In response, Neighborhood Health argues that Gomez is incorrect that its preauthorization for Dr. Davis justified her expectation that Dr. Epstein's work would be covered.  In support of its decision to deny coverage, it points to its own medical doctors' medical conclusions regarding Dr. Epstein's operation, and their determination that the surgery he performed was cosmetic and not medically necessary.  Neighborhood Health also asserts that the fact that it had so many reasons for denying her claim was not evidence of arbitrariness, but was instead evidence that there were multiple problems with her request.

As laid out above, we generally employ a six-step analysis in ERISA cases.  *See Blankenship*, 644 F.3d at 1355.  Yet for purposes of resolving this appeal, we need only focus on step three—

reasonableness.[8]   Even though our review of the district court's grant of summary judgment is subject to *de novo* review, the standard applied to the plan administrator's decision-making is deferential:  under the arbitrary and capricious standard we ask only if there was a reasonable basis for the administrator's decision. *Jett*, 890 F.2d at 1139; *Florida*, 19 F.4th at 1290.  After carefully reviewing the record, we conclude that Neighborhood Health's decision to deny Gomez's coverage request was not arbitrary and capricious.

The record shows that Neighborhood Health reviewed Gomez's medical history and the documents she submitted in support of her administrative appeals.   Both Dr. Haugen and Dr. Stepita provided detailed explanations for why the procedures Dr. Epstein performed were not medically necessary or otherwise covered by Gomez's plan.  Without more, Gomez's bare assertions that Dr. Haugen and Dr. Stepita ignored any supporting evidence in her favor does not equate to arbitrary and capricious decision-making and fails to create a genuine issue of material fact to defeat summary judgment.  *Guevara*, 127 F.4th at 828; *Blankenship*, 644 F.3d at 1356; *see also Paylor v. Hartford Fire Ins. Co.*, 748 F.3d

---

[8] We have permitted courts to assume, at step one, *see Blankenship*, 644 F.3d at 1355, that the administrator's decision was *de novo* wrong and resolve the case on the remaining steps, *see Doyle v. Liberty Life Assurance Co. of Bos.*, 542 F.3d 1352, 1357 (11th Cir. 2008); *see also O.D. v. Jones Lang LaSalle Med. PPO Plus Plan*, 772 F. App'x 800, 804 (11th Cir. 2019) (unpublished) ("We need not decide whether UBH's decision was de novo wrong.  Instead, consistent with our precedent, we may assume the decision was de novo wrong in order to reach the discretion question.").  In part, this is the route the magistrate judge and district court followed, and we do so as well.

1117, 1122 (11th Cir. 2014) ("Overcoming [the summary judgment burden] requires more than speculation . . . .").

The plan required Gomez to receive preauthorization prior to undergoing any procedures with Dr. Epstein, an out-of-network provider, if she wanted his services to be covered. Not only did she fail to do so, but she improperly tries to rely on the approval Dr. Davis received to justify her own misstep. However, Gomez's reliance on the prior approval suffers two significant problems.[9]

First, Neighborhood Health reasonably concluded that the procedure Dr. Davis was approved to perform was different from the procedure Dr. Epstein actually performed. There was, therefore, no basis for assuming that an authorization given to an in-network doctor for one procedure would carry over to a different out-of-network doctor for a *different* procedure. The pre-authorization letter identified Dr. Davis, the procedure codes, and the date of authorization and stated that Gomez should contact Neighborhood Health if the date the procedure was to be performed or changed. The letter further stated that "the treatment," as reflected

---

[9] Gomez argues that the R&R improperly supplied a basis for denial of coverage that Neighborhood Health did not give: her failure to obtain preauthorization. Yet Gomez's argument in her appeals to Neighborhood Health, as well as in court, has been that Neighborhood Health erred when it failed to consider the pre-authorization issued to Dr. Davis in denying coverage for the procedure Dr. Epstein performed. The R&R correctly acknowledged that the preauthorization was for a different procedure to be performed by a different doctor and thus her arbitrary and capricious argument based on the prior approval is without merit.

by the procedure codes, was medically necessary and covered by the plan. Neighborhood Health's other communications reflect Gomez's obligation to update it with relevant information.

Moreover, "the treatment" Dr. Davis was approved to perform was a "blended treatment," including a medically necessary nasal valve reconstruction as well as elective cosmetic elements. However, Dr. Epstein's claim to Neighborhood Health used a different set of procedure codes, showing that there was a difference between the preauthorization and the surgery performed. Moreover, as Dr. Stepita explained, Dr. Epstein's notes did not indicate that this reconstruction was performed and suggested, instead, that Dr. Epstein completed purely cosmetic procedures—septal extension grafts and tip grafts. Thus, as Neighborhood Health explained, there is no indication that Dr. Epstein performed the same procedure as the one Neighborhood Health initially approved.[10] Accordingly, we find unpersuasive Gomez's attempts to use the pre-authorization granted to a different doctor for a different surgery that

[10] Neighborhood Health argues that the only code in common between the two procedures—30465—is a code that is for a cosmetic procedure. That said, we need not resolve this issue. It is relevant, however, that Dr. Davis originally declined to perform the surgery approved—which had cosmetic and non-cosmetic features—because he believed the "risk of complications from *cosmetic* surgery" were too great. This statement supports Neighborhood Health's conclusions that the surgery ultimately completed—which did not have the same *non-cosmetic* purposes as the approved surgery—was primarily cosmetic and not medically necessary under the terms of the plan.

itself was not performed because "the risk of complications from [that] cosmetic surgery . . . [was] simply too high."

Second, and relatedly, Dr. Epstein's treatment notes did not indicate that he had performed all the procedures he submitted for reimbursement—including, importantly, the procedures that would have made the primarily cosmetic procedure into a "blended" procedure with medically necessary components. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008) (explaining that an ERISA plaintiff bears the burden to demonstrate they qualify for coverage). Consequently, the administrator did not act arbitrarily in concluding no evidence showed that Dr. Epstein completed a medically necessary procedure. Gomez primarily submitted photos and other documentation of nasal trauma as well as the medical opinion of Dr. Davis that a medically necessary nasal surgery was required to address the ongoing symptoms from the original preauthorization. The documentation from Dr. Davis *does* lend credence to Gomez's contention that she suffered from significant breathing problems and associated symptoms because of nasal deformities. Even so, just because she previously suffered from symptoms which qualified her for surgery does not mean that she received a medically necessary procedure from Dr. Epstein.

Even with this documented history of negative symptoms and the information provided by Dr. Epstein, two different doctors determined that the procedure was not medically necessary, and Dr. Davis's comments suggested the same. The two doctors who

completed the appeal reviews considered the documentation provided by Gomez but highlighted that, critically, there was no clinical documentation that the procedures performed were medically necessary. *Blankenship*, 644 F.3d at 1354 ("Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision."). Neighborhood Health did not act arbitrarily by giving weight to these opinions. *Id.* at 1356; *Black*, 582 F.3d at 746.

Finally, Gomez contends that Neighborhood Health provided shifting bases for their denial of coverage and that these different bases constitute "procedural irregularities . . . indicative of arbitrary and capricious decisions." We do not agree that the reasons given were inherently inconsistent but, even if they had been, the minor inconsistencies here do not rise to the level of procedural irregularity suggesting arbitrary and capricious decision-making. *See Bloom v. Hartford Life & Acc. Ins. Co.*, 558 F. App'x 854, 857 (11th Cir. 2014) (unpublished) ("[D]eviations in this case, if indeed there were any at all, were de minimis."); *see also Williams v. BellSouth Telecomms., Inc.*, 373 F.3d 1132, 1139 (11th Cir. 2004) (concluding that, despite a conflict of interest, the administrator "thoroughly gathered and reviewed medical evidence" in reaching its decision, justifying affirmance), *overruled in part on other grounds*, *as recognized by Blankenship*, 644 F.3d at 1354–55.

As previously discussed, Gomez's plan generally excludes cosmetic procedures and only covers medically necessary treatments. To establish medical necessity for the procedures she

sought in this case, Gomez had to satisfy multiple criteria. She had to show that the procedure satisfied the criteria which apply to all medical treatments, to all reconstructive procedures, and to reconstructive rhinoplasties. *Glazer*, 524 F.3d at 1247. Each of Neighborhood Health's denials included a determination that the procedure was not medically necessary, even when additional criteria were cited as well. The fact that Neighborhood Health identified multiple ways that this bar had not been met is not indicative of procedural irregularity that points to arbitrary and capricious decision-making, but that Gomez's request for coverage was deficient on multiple grounds and that Neighborhood Health's conclusion to that effect was reasonable. *See Blankenship*, 644 F.3d at 1356.

### V.    CONCLUSION

For the reasons we have explained, the district court and the magistrate judge did not err in concluding that there is no genuine material issue of fact as to whether Neighborhood Health acted arbitrarily and capriciously. Accordingly, we affirm the order granting summary judgment to Neighborhood Health.

**AFFIRMED**.