**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-12563

————————————

ALYOSHA S. TUNKLE,

Plaintiff-Appellant,

versus

RELIASTAR LIFE INSURANCE COMPANY,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:23-cv-00010-SPC-NPM

————————————

Before NEWSOM and BRASHER, Circuit Judges, and HUCK,* District Judge.

---

* Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

PER CURIAM:

This appeal is from a grant of summary judgment to an insurance company that denied benefits under an ERISA plan. Dr. Alyosha Tunkle developed a disabling tremor while he worked as a general surgeon for 21st Century Oncology, Inc. His employer had group long-term disability insurance from ReliaStar Life Insurance Co. The policy covered employees who worked thirty or more hours per week and excluded coverage for preexisting conditions.

The question for us is whether the administrator of the policy had a reasonable basis to conclude that Dr. Tunkle's disability was caused by a preexisting condition and deny him coverage. That inquiry turns on whether the administrative record reasonably reflects that Dr. Tunkle temporarily lost his coverage before he consulted a doctor about his disabling tremor. Because the only contemporaneous records of Dr. Tunkle's employment reflect that he worked for fewer than thirty hours per week before that consultation, the district court correctly granted summary judgment for ReliaStar. We affirm.

**I.**

We start by summarizing Dr. Tunkle's work and medical history. We then turn to 21st Century Oncology's insurance policy, the relevant administrative proceedings, and this appeal's procedural history before the district court.

*A.*

Dr. Tunkle worked as a general surgeon for 21st Century Oncology, Inc.[1] His 2020 pay summaries reflect forty hours of work per week until March 15. From March 15, 2020, Dr. Tunkle's payroll documents begin to reflect lower pay and only four and three-quarters hours of weekly work. These lowered numbers continue through May 23, 2020. For those weeks, Dr. Tunkle's "productivity report," a record of his appointments and hours, reflects that he averaged about fourteen and a half weekly appointments and six and a half weekly hours in surgery or consulting with patients.

His payroll records begin to reflect forty hours of weekly work and a full salary again on May 24, 2020. Those numbers continue through mid-July and are paralleled by increased appointments and hours in his productivity report.

While Dr. Tunkle's salary fluctuated, he developed complications from an earlier shoulder surgery. On May 14, 2020, Dr. Michael Havig evaluated his recovery from surgery. Dr. Tunkle told Dr. Havig that he had a tremor in his left arm that made it difficult to perform surgeries. Dr. Havig verified Dr. Tunkle's tremor through a fine motor test.

Later, Dr. Tunkle consulted with a neurologist. The neurologist verified Dr. Tunkle's tremor with a motor exam. And on July

---

[1] GenesisCare USA, Inc. acquired 21st Century Oncology, Inc. while it employed Dr. Tunkle. For simplicity, we refer to both companies as 21st Century Oncology.

30, 2020, the neurologist concluded that Dr. Tunkle could not perform surgeries with his tremor. Dr. Tunkle did not perform another surgery and later retired.

*B.*

21st Century Oncology enrolled in group long-term disability insurance from ReliaStar Life Insurance Co. before Dr. Tunkle's complications. Its policy covered its physicians who were in "active employment," meaning that they spent at least thirty hours per week performing the "material and substantial duties" of their regular occupations. Doc. 4-1 at 5, 8. If physicians stopped working for at least thirty hours per week, ReliaStar automatically ended their coverage unless they were on vacation or a covered leave of absence.

The policy normally took effect after a "waiting period" of thirty-one continuous days as an active employee, but ReliaStar applied any prior period of active employment with 21st Century Oncology towards the waiting period. The policy did not cover disabilities that began within one year of the effective date of an employee's coverage and were caused by a preexisting condition. It defined a preexisting condition as any condition for which an employee received treatment, consultation, care, or services within the three months before an employee's effective date of coverage.

The policy also gave ReliaStar discretion to determine benefits eligibility.

*C.*

Dr. Tunkle filed a long-term disability claim based on his tremors under the policy. ReliaStar reviewed Dr. Tunkle's claim. As part of its review, it asked 21st Century Oncology whether Dr. Tunkle was on a leave of absence from March to May 2020, and 21st Century Oncology reported that Dr. Tunkle was not on leave. ReliaStar also asked 21st Century Oncology for Dr. Tunkle's payroll records, productivity report, and W-2s.

ReliaStar determined that Dr. Tunkle's potential disability was caused by a preexisting condition and denied his claim. Dr. Tunkle administratively appealed.

As part of his appeal, Dr. Tunkle sent ReliaStar three relevant letters. In his first letter, he asserted that he voluntarily reduced his salary during the pandemic to permit his practice to pay its staff. He argued that this reduction was not directly correlated to his hours. Instead, he maintained that he worked thirty-five to forty hours a week from March to May 2020 performing surgeries, evaluating patients, reviewing medical records, and engaging in other duties. He also argued that he took call for twenty-four hours every day between March and May as an essential worker during the pandemic.

In his second letter, Dr. Tunkle argued that his productivity report was inaccurate. He admitted that it included the time that he budgeted to see patients in the office or complete surgeries. But he maintained that it underestimated the duration of his surgeries and left out several categories of his regular work activities. For

example, it allegedly excluded the time that he spent reviewing medical records, completing documentation, or calling other care providers.

In the third letter, Dr. Tunkle's former coworker, Dr. Justin Warner, alleged that Dr. Tunkle worked for more than thirty hours per week between March and May 2020. He contended that Dr. Tunkle engaged in marketing efforts, business administration, rounding, and other duties that were not documented by his practice. And he asserted that Dr. Tunkle's call duties alone generated at least thirty hours of undocumented work per week. His letter also alleged that Dr. Tunkle chose to cut his salary from March to May 2020 to preserve his employees' jobs.

ReliaStar responded to these letters by asking 21st Century Oncology to send it any hours logs that were not reflected in Dr. Tunkle's payroll records. It also asked 21st Century Oncology to confirm that Dr. Tunkle's practice logged all his hours. 21st Century Oncology directed ReliaStar to Dr. Tunkle's productivity report and verified that Dr. Tunkle's practice recorded his hours.

ReliaStar also asked 21st Century Oncology for any documentation that proved why Dr. Tunkle reduced his salary or established that he worked full time between March and May. In response, Dr. Tunkle's office team verified that he reduced his salary to cover "practice overhead including staff." Doc. 56-1 at 60. 21st Century Oncology also told ReliaStar that it did not have "any information to support Dr. Tunkle working full time" between mid-March and late-May. *Id.*

ReliaStar then hired a certified public accountant to evaluate Dr. Tunkle's W-2s, payroll documents, and productivity report. The CPA concluded that it was "not clear" if Dr. Tunkle's productivity report included all his hours. Doc. 56-1 at 57. She could not determine whether his hours were lower than normal from March 15 to May 23.

After ReliaStar reviewed this information, it upheld its benefits denial. ReliaStar reasoned that Dr. Tunkle's pay summary and productivity report established that he did not work at least thirty hours per week between March 15 and late May 2020. It found that because Dr. Tunkle did not work at least thirty hours per week, his coverage lapsed. It reasoned that he received treatment for his tremor in the three months before his coverage restarted, so his tremor was a preexisting condition under the policy. ReliaStar found that his preexisting tremor caused his disability, so it upheld its denial of his claim under the policy's preexisting condition exclusion.

### D.

Dr. Tunkle then sued ReliaStar in the Middle District of Florida to recover his policy benefits under 29 U.S.C. § 1132(a)(1)(B). ReliaStar moved for summary judgment against Dr. Tunkle because it alleged that the policy administrator's decision was *de novo* correct and was not arbitrary and capricious. Dr. Tunkle cross-moved for partial summary judgment against ReliaStar, asserting that no record evidence proved that he lost his disability coverage.

The district court denied Dr. Tunkle's motion for partial summary judgment, granted ReliaStar's motion for summary judgment, and affirmed the policy administrator's decision to deny Dr. Tunkle's benefits. Dr. Tunkle appealed.

## II.

We review *de novo* the district court's grant of summary judgment. *See Goldfarb v. Reliance Standard Life Ins. Co.*, 106 F.4th 1100, 1105 (11th Cir. 2024). We also review *de novo* the district court's affirmance of ReliaStar's benefits decision, applying the same legal standards that governed the district court. *See Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1354 (11th Cir. 2011) (citing *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1194 (11th Cir. 2010)). Here, we apply the arbitrary and capricious standard to ReliaStar's decision because the policy gave ReliaStar discretion to review Dr. Tunkle's claim. *See Goldfarb*, 106 F.4th at 1106 (citing *Blankenship*, 644 F.3d at 1355–57) (applying the arbitrary and capricious standard to a benefits determination by an administrator with discretion to review claims). That standard asks whether the administrative record before ReliaStar gave it a reasonable basis to deny Dr. Tunkle's claim. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1246 (11th Cir. 2008) (citing *Jett v. Blue Cross & Blue Shield of Ala.*, 890 F.2d 1137, 1139 (11th Cir. 1989)).

Whether ReliaStar's benefits denial was arbitrary and capricious is a question of law that does not hinge on what was factually true about Dr. Tunkle's circumstances. *See Goldfarb*, 106 F.4th at 1106 (first citing *Jett*, 890 F.2d at 1140; and then citing *Blankenship*,

644 F.3d at 1354). Instead, it hinges on only what factual and legal conclusions the administrative record reasonably supported when ReliaStar made its decision, even if it could have supported contrary conclusions or was incomplete. *See Goldfarb*, 106 F.4th at 1106 (first citing *Blankenship*, 644 F.3d at 1354; and then citing *Jett*, 890 F.2d at 1140). Because our analysis under the arbitrary and capricious standard does not ask what facts the record proved, factual disputes within the uncontested record cannot preclude summary judgment under that standard. *See Glazer*, 524 F.3d at 1246–47 (explaining that a factual dispute about whether a benefits claimant was disabled did not preclude summary judgment for an insurer under the arbitrary and capricious standard because the contents of the administrative record were not in dispute).

Dr. Tunkle argues that ReliaStar's decision was arbitrary and capricious because his productivity report, payroll records, and letters prove that ReliaStar had no reasonable basis to conclude that he worked for fewer than thirty hours per week. ReliaStar asserts that the payroll records, productivity report, and emails in the record gave it a reasonable basis to deny Dr. Tunkle's claim.

We agree with ReliaStar for two reasons.

First, Dr. Tunkle's productivity report and payroll records reasonably support that he lost coverage because neither reflects thirty or more hours of weekly work between March 15 and May 23, 2020. His productivity report records a weekly average of only six and a half hours in surgery or consulting with patients during

that time. And his payroll records reflect a weekly average of only four and three-quarters hours of work.

Second, 21st Century Oncology's emails to ReliaStar about his schedule strengthen our conclusion. 21st Century Oncology told ReliaStar that Dr. Tunkle's payroll records and productivity report were its only records of his hours and that all his hours were recorded. 21st Century Oncology also asserted that it lacked "any information to support Dr. Tunkle working full time" between mid-March and mid-May. Doc. 56-1 at 60. Viewed together with his productivity report and payroll records, these assertions establish that ReliaStar had a reasonable basis to conclude that Dr. Tunkle worked for fewer than thirty hours per week between March and May 2020.

Some record evidence supports a contrary conclusion. Dr. Tunkle's office team emailed ReliaStar to explain that he reduced his salary to cover practice overhead. Dr. Tunkle and Dr. Warner asserted that Dr. Tunkle performed undocumented work. And ReliaStar's CPA could not determine whether Dr. Tunkle's productivity report was complete or if his hours were normal. But this evidence does not alter our conclusion. ReliaStar's determination that Dr. Tunkle worked for fewer than thirty hours per week was not arbitrary and capricious because the record reasonably supported it, regardless of whether the record also supported a different conclusion. *See Goldfarb*, 106 F.4th at 1106 (citing *Jett*, 890 F.2d at 1140).

Dr. Tunkle argues that the administrative record did not reasonably support ReliaStar's conclusion for three reasons, but none are persuasive.

First, Dr. Tunkle argues that his payroll records inaccurately reflect his hours because they list different hours than his productivity report. But his productivity report—the only other contemporaneous documentation of Dr. Tunkle's hours in the record—also reflects that he worked for fewer than thirty hours per week.

Second, Dr. Tunkle argues that it is common sense that his productivity report is an incomplete record of his hours because surgeons do more than have appointments with patients. He argues that his own account of his undocumented work establishes that he worked for more than thirty hours per week. But his arguments at most suggest that a reasonable administrator could have approved Dr. Tunkle's claim for benefits, and that is not enough. The question is whether the record reasonably supported the administrator's decision, not whether it exclusively supported its decision. *See Goldfarb*, 106 F.4th at 1106 (citing *Jett*, 890 F.2d at 1140).

Third, Dr. Tunkle asserted at oral argument that his productivity report reflects twelve hours of work per day. His productivity report does list a "total time" of twelve hours each day, Doc. 56-1 at 370–82, but ReliaStar had a reasonable basis to conclude that "total time" does not mean "hours worked." One of Dr. Tunkle's letters asserted that he worked thirty-five to forty hours per week, far fewer than the sixty hours per week that his productivity report calls "total time." And after 21st Century Oncology sent ReliaStar

his productivity report with the "total time" metric, it asserted that it lacked any information to support that Dr. Tunkle worked full time. Because neither Dr. Tunkle nor his employer treated his "total time" as his hours worked, ReliaStar had a reasonable basis to conclude that "total time" does not mean hours worked.

Instead, the record provided a reasonable basis for it to conclude that "total time" is a point of comparison for the hours that Dr. Tunkle worked, not an account of them. Dr. Tunkle's productivity report divides his recorded hours by his "total time" to create a productivity percentage. Consistent with that practice, ReliaStar's CPA treated Dr. Tunkle's "total time" as a point of comparison for his hours worked. ReliaStar could have reasonably adopted that interpretation and concluded that all contemporaneous records of Dr. Tunkle's hours reflected reduced hours from March to May 2020.

Dr. Tunkle disputes only the determination that he worked for fewer than thirty hours per week. He does not argue that if ReliaStar's hours determination was reasonable, ReliaStar still lacked a basis to deny his claim. Nor could he. ReliaStar automatically ended physicians' disability coverage if they worked for fewer than thirty hours per week unless they were on a covered leave of absence. The record reflects that Dr. Tunkle was not on a covered leave of absence between March and May 2020, so ReliaStar had a reasonable basis to determine that he lost his coverage in March when his weekly hours decreased. ReliaStar could have reasonably

concluded that his coverage did not restart until he began to be paid for forty hours of work per week again on May 24, 2020.

21st Century Oncology's policy did not cover disabilities that began within one year of that effective date of coverage if they were caused by a preexisting condition. The record reasonably reflects that Dr. Tunkle's alleged disability began within a year of May 24, 2020. And the record gave ReliaStar a reasonable basis to conclude that a preexisting condition caused Dr. Tunkle's disability. The policy defines preexisting condition to include any condition for which an employee received consultation within the three months before his effective date of coverage. The record reflects that Dr. Tunkle consulted Dr. Havig about the tremor underlying his disability within the three months before May 24. That consultation gave ReliaStar a reasonable basis to conclude that a preexisting condition caused his disability and to deny his claim. Because the record gave ReliaStar a reasonable basis to conclude that Dr. Tunkle's potential disability was caused by a preexisting condition, its benefits denial was not arbitrary and capricious.

We still must ask whether the benefits administrator, ReliaStar, operated under a conflict of interest. *See Blankenship*, 644 F.3d at 1355 (citing *Capone*, 592 F.3d at 1195). "[W]here . . . there is no claim that the administrator labored under a conflict of interest," our analysis ends. *See Hill v. Emp. Benefits Admin. Comm. of Mueller Grp. LLC*, 971 F.3d 1321, 1326 (11th Cir. 2020). Here, Dr. Tunkle "does not dispute" that ReliaStar "was not operating under a

conflict of interest." Appellant's Br. at 17. That concession ends our analysis.

### III.

The district court is **AFFIRMED**.